The UNIVERSITY OF HOUSTON, Appellant,

v.

Stephen BARTH, Appellee.

No. 01–06–00490–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 2011.

Shelley Alisa Dahlberg, Assistant Attorney General, Austin, TX, for Appellant.

J.W. Beverly, Dow Golub Remels & Beverly, LLP, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MATTHEWS.*

## OPINION

LAURA CARTER HIGLEY, Justice.

Stephen Barth obtained a judgment awarding damages and attorney's fees against the University of Houston ("University") based on a jury's finding that the University, Barth's employer, had violated the Texas Whistleblower Act.[1] On original submission, we held that the University had waived its liability challenge to the judgment because it had failed to dispute all bases on which the jury could have found that the University violated the Whistleblower Act.[2]

---

* The Honorable Sylvia Matthews, Judge of the 281st District Court of Harris County, participating by assignment.

1. TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004).

2. *University of Houston v. Barth*, 265 S.W.3d 607, 616 (Tex.App.-Houston [1st Dist.] 2008, pet. granted).

After our opinion issued, the Supreme Court of Texas decided *State v. Lueck* in which it held that the elements of the Whistleblower Act must be considered to determine not only liability, but also subject-matter jurisdiction.[3] Based on its holding in *Lueck*, the Supreme Court remands this case to us to determine whether "Barth's claims meet the Whistleblower Act's jurisdictional requirements for suit against a governmental entity and, thus, whether the trial court had jurisdiction over Barth's suit."[4]

After conducting the review mandated by the Supreme Court, we hold that the trial court had subject-matter jurisdiction and affirm the trial court's judgment.

### Factual & Procedural Background

Steven Barth is a tenured professor in the University of Houston's Conrad N. Hilton College of Hotel Management ("the College"). In 1998 and early 1999, the College's business manager, David Gilkeson, told Barth that the dean of the College, Alan Stutts, had engaged in questionable accounting practices, mishandled University funds, and entered into an unauthorized contract for services on behalf of the college. Specifically, Gilkeson told Barth that he was concerned about the following accounting practices that he attributed to Stutts: (1) money donated by the Hilton Foundation and earmarked for renovation of the University Hilton was used to pay for expenses not related to the renovation; (2) Stutts had not followed University procurement policies and procedures when he had entered into a contract for public relations services; (3) money held in the University food and beverage account was used to pay for services rendered under a public relations contract; and (4) expenditures made on the public relations contract were improperly certified. Gilkeson was concerned because these questionable practices resulted in deficits in the College's operations. Gilkeson told Barth that he feared that the deficits would be attributed to him and that he might lose his job.

Barth was aware that the written policy governing the University of Houston System, as found in the System Administrative Memorandum, commonly referred to as "the SAM," provided that "all employees of the University of Houston System ... have an obligation to report any suspected theft, fraud, embezzlement, destruction of property or any other irregularity causing a loss of cash, property or any other asset of the university." Barth was also aware that the SAM warns that employees who are aware of criminal activity against the University and fail to report it, may be subject to disciplinary action. The SAM requires that the University employee report the criminal conduct to one of the officials identified in the SAM. These include the University police, the University's general counsel, and its chief financial officer.

Being the dean of the College, Stutts was Barth's supervisor. Nonetheless, in March 1999, Barth reported Stutts's alleged fiscal improprieties to Randy Harris, the University's chief financial officer, and to its general counsel, Dennis Duffy. In May 1999, Barth also reported Stutts's conduct to Don Guyton, the University's internal auditor and to Elaine Charlson, the associate provost.

As his supervisor, Stutts completed Barth's annual evaluation for the 1998–1999 academic year on June 17, 1999. In the evaluation, Stutts gave Barth a "mar-

---

3. 290 S.W.3d 876, 883 (Tex.2009).

4. *University of Houston v. Barth,* 313 S.W.3d 817, 818 (Tex.2010).

ginal" rating with respect to "grantsmanship," which pertained to Barth's success in obtaining outside grants for the college. The marginal rating adversely affected the merit raise received by Barth.

In 1999, Barth was also denied funds for travel related to his position. In addition, after Barth reported Stutts's conduct, Stutts withdrew his participation in a symposium created by Barth from which Barth received $10,000 in annual compensation. After Stutts stopped participating, one of the symposium's sponsors withdrew its support in December 1999, and the 2000 symposium was cancelled.

On March 10, 2000, Barth filed a grievance with the University's grievance committee. In the grievance, Barth asserted, "Dean Stutts has retaliated against me for making the university administration aware of inappropriate and/or illegal administrative actions by his administration." The following were among the "retaliatory actions taken by Dean Stutts" cited by Barth: (1) "denial of travel dollars"; (2) "arbitrary and capricious evaluation (disparately imparting [sic] me by denying at least $600–$1,000 increase in salary)"; and (3) "withdrawing support for my initiatives including the Hospitality Legal Symposium, causing its cancellation and a loss of reputation in the industry."

In June 2000, Barth reported Stutts's conduct to the University's police department. However, no criminal charges were ever filed against Stutts.

On August 17, 2000, Barth filed a second grievance asserting that Stutts had again retaliated against him by giving Barth a lower-than-deserved merit evaluation for the 1999–2000 academic year. This adversely affected his salary increase for the year 2001. Neither of Barth's grievances

was successfully resolved through the University's internal grievance process.

In 2001, Randy Harris, the University's chief financial officer, requested University internal auditor Don Guyton to audit Barth's reports that Stutts had violated state civil and criminal law as well as University policy. Among his reports, Barth had told University officials that he believed that Stutts had violated Texas Penal Code section 37.10, which provides that tampering with a government document is a criminal offense.[5] Barth claimed that Stutts had violated that section by making false statements on government payment vouchers.

In his audit report, Guyton concluded that (1) charges made to the University Hilton Hotel renovation account should have been charged to other accounts; (2) the expenditure vouchers associated with the public relations contract were not properly certified; (3) the College had improperly processed an amended food service contract; and (4) there had been no violation of Penal Code section 37.10.

The audit also found that Stutts had entered into a public relations contract without following University and state procurement criteria. In addition to failing to comply with the University's MAPP and with state regulations, the public relations contract had not been processed through the University's Contract Administration Department, had not been approved by the University's general counsel, and had not been presented to the Board of Regents. These failures were violations of the SAM, specifically SAM 03.A.05.

Soon after the audit was published, Barth sued the University. He alleged, as he had in his grievances, that the University had retaliated against him for reporting Stutts's improper actions. Barth asserted

<hr>

5. Tex. Penal Code Ann. § 37.10 (Vernon 2011).

that the retaliation resulted in an adverse employment action against him. This included receiving a lower-than-deserved merit evaluation, resulting in a denial of a pay raise. Barth claimed that the University's action was a violation of the Whistleblower Act.

The University filed a plea to the jurisdiction seeking dismissal of Barth's suit. The University asserted, inter alia, that Barth had not timely initiated the grievance process, as required by the Whistleblower Act, thereby depriving the trial court of subject-matter jurisdiction.

The trial court denied the University's plea to the jurisdiction. We affirmed the denial in *University of Houston v. Barth,* holding that issues of fact existed regarding whether Barth had timely initiated the grievance process and regarding whether Barth had suffered adverse employment actions. 178 S.W.3d 157, 164 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

The case was ultimately tried to a jury. At trial, Barth asserted three specific grounds to support his whistleblower claim: (1) retaliation for his report to University officials that Stutts violated the Texas Penal Code; (2) retaliation for his report to University officials that Stutts violated the University's internal rules, including the MAPP and the SAM; and (3) retaliation for his report to University officials that Stutts had violated state statutes and regulations governing the administration of government contracts. The jury found that the University had violated the Whistleblower Act. However, the jury charge did not require the jury to reveal on which of Barth's grounds it had made its liability finding against the University. The jury also found that Barth was entitled to actual damages totaling $40,000, as well as $245,000 in attorney's fees for trial preparation and attendance, and $20,000 for appellate attorney's fees. The trial court rendered judgment on the jury's findings.

The University appealed to this Court. It asserted that the trial court lacked jurisdiction because Barth had not timely filed his grievances. *University of Houston v. Barth,* 265 S.W.3d 607, 610 (Tex. App.-Houston [1st Dist.] 2008, pet. granted). We held that Barth had not timely filed his first grievance, but that he had timely filed his second grievance. *Id.* at 612–14.

The University also challenged its liability to Barth by asserting that the evidence was legally insufficient to support the jury's finding with regard to each element of the Whistleblower Act. *Id.* at 615. We overruled the University's sufficiency-of-the-evidence challenge because the University had not challenged each ground on which Barth had asserted his whistleblower claim, and the charge had not required the jury to indicate on which ground it found that the University had violated the Whistleblower Act. *Id.* at 615–16. Specifically, the University had not challenged Barth's claim that the University had retaliated against him for his report to University officials that Stutts's actions had violated state statutes and regulations governing the administration of government contracts. *Id.* at 616. One justice dissented, stating that the University had adequately challenged all bases on which the jury could have based its liability finding. *See id.* at 618–623 (Alcala, J., dissenting).

Following our opinion, the Supreme Court of Texas decided *State v. Lueck,* 290 S.W.3d 876 (Tex.2009). The court held that the elements of a whistleblower claim "can be considered to determine both jurisdiction and liability." *Id.* at 883 (citing TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004)).

In its petition for review, the University relied on *Lueck*, asserting that the trial court lacked subject-matter jurisdiction over this case because Barth had not proven the elements of his whistleblower claim. The supreme court granted the University's petition for review and remanded this case to us. *See University of Houston v. Barth*, 313 S.W.3d 817, 818 (Tex.2010). In its per curiam opinion, the supreme court stated, "The University challenges whether the trial court had jurisdiction." *Id.* Citing *Lueck*, the supreme court held that "whether Barth's reports to University officials are good-faith reports of a violation of law to an appropriate law-enforcement authority is a jurisdictional question." *Id.* The court stated, "Jurisdiction may be raised for the first time on appeal and may not be waived by the parties." *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993)). The supreme court reversed our judgment and remanded the case to us "to determine whether, under the analysis set forth in *Lueck*, Barth's claims meet the Whistleblower Act's jurisdictional requirements for suit against a governmental entity and, thus, whether the trial court had jurisdiction over Barth's suit." *Id.* In its brief on remand, the University presents one global issue, as follows: "Did Barth present evidence to support each element of his Whistleblower Act claim, thus establishing the courts' jurisdiction over his claim?"

## Standard of Review

 Whether a court has subject-matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *Id.* The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* When the facts underlying the merits and subject-matter jurisdiction are intertwined, the court determining jurisdiction may consider evidence necessary to resolve the jurisdictional issues. *See Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). When an appellate court questions subject-matter jurisdiction for the first time on appeal, it must construe the petition in favor of the party, and, if necessary, review the entire record to determine if any evidence supports jurisdiction. *See Tex. Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d at 446.

## The Whistleblower Act

### A. The Law

 The immunity provision in the Whistleblower Act provides as follows:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

Tex. Gov't Code Ann. § 554.0035 (Vernon 2004). Thus, section 554.0035 imposes two requirements to waive a governmental entity's immunity and vest a court with jurisdiction: (1) the plaintiff must be a public employee, and (2) he must allege a "violation of this chapter." *Lueck*, 290 S.W.3d at 881. Section 554.002 of the act sets out the standard for a "violation of this chapter." *Id.* The elements of section 554.002 are "necessarily" considered as jurisdictional facts "in order to ascertain what constitutes a violation, and whether that violation has actually been alleged." *Id.*

Section 554.002 of the Whistleblower Act provides as follows:

> (a) A state or local governmental entity may not suspend or terminate the em-

ployment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. (b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004).

▬▬▬▬ As found in section 554.002(a), "good faith" means "that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex.1996). The test's first element is subjective and ensures that a whistleblower claimant believed that he was reporting an actual violation of the law, while the test's second element is objective and ensures that the claimant received the act's protection only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of the law. *Id.* at 784–85; *City of Houston v. Levingston*, 221 S.W.3d 204, 218 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Under section 554.002(b), "good faith" means that (1) the employee subjectively believed the governmental entity was authorized to regulate under or enforce the law alleged to be violated in the report, or investigate or prosecute a violation of criminal law, and (2) the employee's belief was objectively reasonable in light of the employee's training and experience.

*Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320–21 (Tex.2002); *Levingston*, 221 S.W.3d at 219.

**B. Analysis: Good Faith Report of Violation of the SAM**

Among the alleged law violations reported by Barth to University officials was Stutts's conduct of entering into a public relations contract on behalf of the College without following the University's standard procurement protocol, as provided in the SAM. As determined by Guyton in his audit report, Stutts's conduct was a violation of the SAM, specifically SAM 03.A.05.

The University asserts that Barth's report of a SAM violation cannot support his whistleblower claim because (1) the SAM is not a "law" for purposes of the Whistleblower Act, and (2) Barth did not report the alleged SAM violation to an appropriate law enforcement authority, as defined by the act. *See* TEX. GOV'T CODE. ANN. § 554.002.

**1. Violation of a "Law"**

▬▬▬ As defined in the Whistleblower Act, a "law" is a state or federal statute, a local ordinance, or "a rule adopted under a statute or ordinance." TEX. GOV'T CODE ANN. § 554.001(1). Barth does not contend that a SAM is a state or federal statute or a local ordinance; rather, the parties dispute whether the SAM is a "rule adopted under a statute or ordinance." *See id.* § 554.001(1)(C).

The University of Houston is a legislatively-created university. *See* TEX. EDUC. CODE ANN. § 111.01 (Vernon 2002). The University campus at which Barth is a tenured professor is part of the University of Houston System, which is governed by the Board of Regents of the University of Houston. *See id.* at § 111.20 (Vernon 2002). The Board of Regents is empowered by the Texas Legislature to "enact

bylaws, rules, and regulations necessary for the successful management and government of the university." *See id.* at § 111.35 (Vernon 2002).

This Court has previously held, "Since the Board of Regents of the University of Houston is authorized by statute to enact bylaws, rules and regulations necessary to the government of the University, its rules are of the same force as would be a like enactment of the legislature." *Fazekas v. Univ. of Houston,* 565 S.W.2d 299, 304 (Tex.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.). The University asserts that this case is unlike *Fazekas.* It points out, "In *Fazekas,* there was evidence before the court that the University's Board of Regents had revised the policy at issue in that case." *See id.* at 303. The University contends that there is no evidence in the record to show that the SAM was adopted or revised by the Board of Regents. We disagree.

As background, Guyton testified,

You have three levels of policies. You have the Board policies, which the Board of Regents develops, and then you have the System policies, which is the system, the University of Houston system, that level. And then you have the campus. Each of the campuses are [sic] under the System. So that's the campus level policy.

With respect to promulgation of the administrative rules found in the SAM, the following exchange occurred at trial:

[Barth's counsel:] The Board has their own policies?

[Guyton:] Right.

Q. But pursuant to those policies, they are policies that are established for the University of Houston System as a whole, correct?

A. That's correct.

Q. And there are also policies that, *pursuant to the Board's authority,* that are policies and rules that are issued for each component of the University of Houston System?

A. That's correct.

(Emphasis added.)

Guyton's testimony that the policies "that are established for the University of Houston System as a whole," i.e., the SAM, provides some evidence that the administrative policies in the SAM are rules or regulations adopted by the Board of Regents. Because the Board has legislative authority to enact rules and regulations, the administrative rules set forth in the SAM, pursuant to the Board's authority, are laws for purposes of Whistleblower Act. *See* Tex. Educ.Code Ann. § 111.35; Tex. Gov't Code Ann. § 554.001(1)(C); *Fazekas,* 565 S.W.2d at 304; *see also Barth,* 265 S.W.3d at 625 (Alcala, J., dissenting) (concluding that the SAM is a law under the Whistleblower Act). We conclude that, as defined by the Whistleblower Act, Barth reported a violation of the law when he reported Stutts's SAM violations.

**2. Report to Appropriate Law Enforcement Authority**

 The University also asserts that Barth did not report the violation of the SAM to an appropriate law enforcement authority.[6] Barth points out that he

---

**6.** Barth was also required to show that he had, in good faith, reported a violation of the law. *See Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 320 (Tex.2002). In its briefing, the University contends that Barth did not have a good faith belief, based on his training

and experience, that Stutts had violated the Penal Code. The University does not assert that Barth did not have a good faith belief that Stutts violated the SAM. Indeed, unlike the alleged Penal Code violation, internal auditor Guyton found that Stutts had violated

reported Stutts's conduct of entering into a public relations contract on behalf of the College without following the University's standard procurement protocol to Randy Harris, the University's chief financial officer. Guyton's audit found this conduct to be a violation of SAM 03.A.05. Barth asserts that Harris was an appropriate law enforcement authority to whom to report the SAM violation. He points to evidence showing that Harris had the authority to enforce the SAM provisions pertaining to the administration of the University's financial matters.

As correctly stated by the University, a whistleblower claimant must have reported a violation of law to an "appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). An entity is an appropriate law enforcement authority if it is "part of a state or local governmental entity or of the federal government that the employee in good-faith believes is authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b); *see also Needham,* 82 S.W.3d at 320. Because the SAM is not a criminal law, Barth needed to show that he reported the SAM violation to a party that could regulate under or enforce the SAM. *See* TEX. GOV'T CODE ANN. § 554.002(b). Barth contends that University chief financial officer Randy Harris was an appropriate law enforcement authority for purposes of establish-

ing his whistleblower claim because Harris was authorized to enforce the SAM provisions governing financial matters, including SAM 03.A.05.

At trial, internal auditor Guyton was asked twice whether Harris had the authority to enforce the University's rules regarding financial affairs. He responded in the affirmative each time. Guyton also agreed that, if the University's financial rules are violated, Harris, as chief financial officer, is authorized to take action. In addition, Barth's testimony indicates that he reported Stutts's conduct to Harris, in part, because he knew that Harris had the ability to enforce University rules relating to financial matters. Barth had served on the faculty senate. From this experience, Barth was aware that Harris had authority to regulate and to enforce the University's "financial guidelines."

In its briefing, the University asserts that the testimony indicating that Harris had the authority to enforce the University's financial rules is not specific enough to show that that he had the authority to enforce the applicable SAM provisions. The University argues that such testimony could be interpreted to mean that Harris had authority to enforce only the financial rules found in the MAPP but did not have the authority to enforce those found in the SAMs.[7] We disagree.

The record shows that the administrative rules governing financial matters at

the SAM. In addition, Barth testified that he had learned of Stutts's act of entering into the public relations contract without following University financial rules from business manager, Dave Gilkeson, who was himself an admitted participant in the complained-of conduct. Gilkeson told Barth that he feared for his job because of his participation. It is reasonable to infer that Barth found Gilkeson's information to be credible based on Gilkeson's admitted involvement in the complained-of conduct. In other words, evidence was presented that Barth had a good faith

belief that the SAM had been violated when he reported Stutts's conduct to University officials.

7. The University asserts that the record contains no evidence to show that the MAPP is a "law" as defined in the Whistleblower Act. We agree. In contrast to his testimony regarding the SAM, Guyton's testimony indicates that the MAPP is not promulgated pursuant to the Board of Regents' authority.

the University are found in the MAPP and the SAM. Guyton's audit report indicates that Stutts's conduct violated both the MAPP and the SAM provisions governing the administration of financial matters. Thus, it is most logical to infer from Guyton's and Barth's testimony regarding Harris's authority to enforce the University's financial rules, that Harris could enforce *all* University rules governing financial matters; that is, Harris could enforce both the MAPP and the SAM provisions governing the administration and regulations of financial matters at the University.

In addition, Barth's position that Harris had the authority to enforce the SAM provisions governing financial matters is supported by Guyton's audit report. The report states that the audit was conducted at Harris's request. The final audit report indicates that it was addressed to Harris. The report further indicates that the violations listed in the report, including the SAM violations, were brought to the attention of University officials, including Harris "in order that appropriate action could be taken."

In sum, the testimony indicating that Harris had the authority to enforce the University's financial rules, when read with the audit report, provides some evidence that Harris had the authority to enforce SAM 03.A.05. We conclude that Barth offered sufficient evidence, for purposes of establishing jurisdiction under the Whistleblower Act, to show that he reported a violation of the SAM, a "law," to the appropriate law enforcement authority. Thus, we hold that the trial court had subject-matter jurisdiction over Barth's whistleblower claim.[8]

We overrule the University's sole issue on remand asserting that the trial court lacked subject-matter jurisdiction over Barth's whistleblower claim.[9]

## Conclusion

We affirm the judgment of the trial court.

---

**8.** With regard to Barth's report of the SAM violation, the University challenges only the elements of the Whistleblower Act discussed *supra*. The University challenges the causation element of the act with respect to Barth's report of a violation of criminal law only. To the extent that the University claims that such element is also in dispute with respect to the reporting of the SAM violation, we rely on our analysis in our opinion on original submission with respect to causation. *See Barth*, 265 S.W.3d at 616–18 (holding that Barth presented some evidence to support jury's finding that his reports of Stutts's actions resulted in retaliation by the University; that is, his reports were "a cause" of an adverse employment action).

**9.** We need not discuss the University's jurisdictional challenges to Barth's whistleblower

claim with respect to his reports to University officials that Stutts violated (1) the Penal Code and (2) state law pertaining to the administration of government contracts. The jury did not indicate on which of Barth's claimed law-violation reports it found liability under the Whistleblower Act. We are mindful that the supreme court remanded this case to us for the limited determination of whether the trial court had subject-matter jurisdiction as discussed in *Lueck*. Barth's report to Harris regarding Stutts's conduct violating the SAM supports his whistleblower claim and imbues the trial court with subject-matter jurisdiction. Because there is a basis for jurisdiction to support the claim, we affirm the trial court's judgment.