# IN THE SUPREME COURT OF TEXAS

════════════
No. 12-0358
════════════

UNIVERSITY OF HOUSTON, PETITIONER,

v.

STEPHEN BARTH, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**PER CURIAM**

In this case, Stephen Barth, a professor at the University of Houston, sued the University under the Texas Whistleblower Act for retaliation allegedly stemming from Barth's reports that his supervisor violated internal administrative policies located in the University's System Administrative Memorandum (SAM) and other state civil and criminal law. The court of appeals held that the trial court had subject-matter jurisdiction over Barth's claim because the SAM's administrative policies constitute "law" under the Whistleblower Act. 365 S.W.3d 438, 446. We disagree. Because there is no evidence that the University's Board of Regents enacted the SAM's administrative rules pursuant to authority granted to it in the Texas Education Code, we hold that the rules do not fall within the definition of "law" under the Whistleblower Act. *See* TEX. GOV'T CODE § 554.001(1). Moreover, there is no evidence that Barth had an objectively reasonable belief that his reports of the alleged violations of state civil and criminal law were made to an "appropriate law enforcement

authority." *See id.* § 554.002. Accordingly, the University's sovereign immunity is not waived, and thus we reverse the court of appeals' judgment and dismiss the case for lack of subject-matter jurisdiction. *See id.* § 554.0035.

Barth is an attorney and tenured professor in the hotel management college at the University. In March and April of 1999, Barth reported to the University's chief financial officer, Randy Harris, and general counsel, Dennis Duffy, that his college's dean, Alan Stutts, allegedly engaged in questionable accounting practices, mishandled funds, and entered into improper contracts relating to the University. In May 1999, Barth also reported the alleged violations to the University's internal auditor, Don Guyton, and spoke with an associate provost, Elaine Charlson, about the alleged violations. In June 1999, Stutts gave Barth a "marginal" rating in one area during Barth's annual evaluation, which affected his merit raise for that year. Barth was also denied travel funds in 1999, and Barth's annual legal symposium on hotel law was cancelled allegedly after Stutts and a sponsor withdrew their support. Barth filed two administrative grievances against Stutts, claiming he was subject to adverse personnel actions for reporting the alleged violations. However, the parties were unable to successfully resolve Barth's grievances.

In 2001, Harris requested that Guyton investigate Barth's allegations regarding Stutts, which included claims that Stutts violated state civil and criminal laws as well as University policy. In the audit report, Guyton concluded that Stutts failed to comply with internal University procedures and state regulations, including section 03.A.05 of the University's SAM, which requires a contract between the hotel management college and a public relations firm to be approved by the office of general counsel and to be reported to the Board of Regents. Guyton also found that Stutts did not

violate section 37.10 of the Texas Penal Code, which proscribes tampering with governmental records. *See* TEX. PENAL CODE § 37.10. Shortly after the University published Guyton's report, Barth sued the University for retaliation under the Whistleblower Act.

At trial, Barth claimed liability under the Whistleblower Act based on his reporting of three alleged violations of law, which included: (1) the Penal Code, (2) the University's SAM, and (3) state civil statutes on government contracting. The jury found the University liable, but the charge did not specify on which of the three grounds. The trial court rendered judgment in favor of Barth, awarding him $40,000 in actual damages and $245,000 in attorney's fees. The University appealed.

The court of appeals reversed the trial court's judgment, holding that the trial court lacked jurisdiction over some of Barth's claims due to the untimely filing of his first grievance and remanded for a new trial. 265 S.W.3d 607, 614. The court of appeals also held that the University had waived its legal sufficiency challenge as to the elements of Barth's whistleblower claim. *Id.* at 616. Both parties appealed. We reversed and remanded the case back to the court of appeals to consider whether the trial court had jurisdiction in light of our decision in *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009), where we held the elements of a claim under the Whistleblower Act are jurisdictional and may not be waived. 313 S.W.3d 817, 818 (Tex. 2010) (per curiam).

On remand, the court of appeals held that the trial court had subject-matter jurisdiction and affirmed the trial court's judgment. 365 S.W.3d 438, 441. The court of appeals concluded that Barth's allegation that the University retaliated against him for reporting that Stutts violated the SAM's internal policies was sufficient for purposes of establishing jurisdiction under the

3

Whistleblower Act.[1]  *Id.* at 448.  The University again petitions this Court for review, arguing that (1) the SAM's administrative policies are not "law" under the Whistleblower Act, and (2) Barth failed to show that his alternative reports of violations of law were made to an appropriate law enforcement authority as required by the Whistleblower Act.  *See* TEX. GOV'T CODE §§ 554.001–.002.

The issue is one of subject-matter jurisdiction, which we review de novo.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (providing that subject-matter jurisdiction is never presumed and cannot be waived).  Section 554.0035 of the Texas Government Code waives sovereign immunity when a public employee alleges a violation of the Whistleblower Act.  TEX. GOV'T CODE § 554.0035.  A violation "occurs when a governmental entity retaliates against a public employee for making a good-faith report of a violation of law to an appropriate law enforcement authority."  *Lueck*, 290 S.W.3d at 878.  The Whistleblower Act defines "law" as a state or federal statute, an ordinance of a local governmental entity, or "a rule adopted under a statute or ordinance."  TEX. GOV'T CODE § 554.001(1).  The first issue presented here requires us to determine whether the administrative policies in the University's SAM are "rule[s] adopted under a statute or ordinance."

We have never construed the phrase "a rule adopted under a statute or ordinance," but we have noted that a constable department's internal policies are not "law" as the term is defined under the Whistleblower Act.  *See, e.g.*, *Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922

---

[1] Because the court of appeals held that Barth's report related to Stutts's alleged violation of the SAM's administrative policies imbued the trial court with jurisdiction, the court of appeals did not address the University's challenges to the other two alleged violations of law.  365 S.W.3d at 448 n.9.

S.W.2d 954, 956 (Tex. 1996) ("Grabowski presented no evidence of a law he believed Constable Moore violated other than his department's internal policies."); *accord Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied) ("Other complaints and grievances, including alleged violations of an agency's internal procedures and policies, will not support a [whistleblower] claim."); *City of Houston v. Kallina*, 97 S.W.3d 170, 174–75 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("[T]he Whistleblower Act does not protect reports of violations of a department's internal policies."); *Ruiz v. City of San Antonio*, 966 S.W.2d 128, 130 (Tex. App.—Austin 1998, no pet.) (same). In *Grabowski*, we held that a peace officer's report that a constable allegedly failed to comply with departmental policies when conducting an investigation did not satisfy the good-faith element of a whistleblower claim because there was no evidence in the record showing that his belief that a law had been violated was reasonable in light of his experience as a peace officer. *Grabowski*, 922 S.W.2d at 956. In contrast to the department's policies in *Grabowski*, we have held that rules enacted by the University of Texas's Board of Regents under the University of Texas's predecessor enabling statute "are of the same force as would be a like enactment of the Legislature." *See Foley v. Benedict*, 55 S.W.2d 805, 808 (Tex. 1932). Our inquiry here focuses on whether the SAM's policies were adopted under the University's enabling statute.

We disagree with the court of appeals that the SAM's administrative policies are "law" under the Whistleblower Act because there is no evidence that the policies were enacted by the Board of Regents as required by the University's enabling statute. *See* TEX. EDUC. CODE § 111.35. The court of appeals relied on Guyton's testimony that the SAM's policies "are established for the University of Houston System as a whole" as sufficient evidence "that the administrative policies in the SAM

are rules or regulations adopted by the Board of Regents." *Id.* A rule is only a "law" under the Whistleblower Act, however, if the rule is "adopted under a statute." TEX. GOV'T CODE § 554.001(1)(C). We agree that the applicable statute in this case is section 111.35 of the Education Code, which grants the University's Board of Regents authority to "*enact* bylaws, rules, and regulations necessary for the successful management and government of the university." TEX. EDUC. CODE § 111.35 (emphasis added). Thus, for the SAM's administrative policies to be "rule[s] adopted under a statute," the Board of Regents must have *enacted* the policies as required by that section. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "enact" as "[t]o make into law by authoritative act" or "to pass"). Neither Guyton's testimony nor any other evidence presented at trial provides evidence that the Board of Regents enacted or passed the SAM's administrative policies.

In fact, the record is unclear as to which party enacts the SAM's administrative policies. The record demonstrates that three levels of internal policies govern the University: (1) the Board of Regents' policies; (2) the system-level policies, known as the SAM; and (3) the campus-level policies, known as the Manual of Administrative Policies and Procedures (MAPP). The record is clear that the Board of Regents passes their own policies. However, Guyton's testimony regarding the party responsible for enacting the SAM and MAPP is less clear:

> Q:      [Barth's Counsel:] Does the Board of Regents of the University of Houston System have the authority to establish policies and rules regarding the administration of the University System and the University of Houston?
> A:      [Guyton:] Yes.
> Q:      And those policies and procedures—some of those policies and procedures are in various memoranda that are issued, correct?
> A:      Not the Board's policies, no. The Board establishes their own policies.
> Q:      The Board has their own policies?
> A:      Right.

6

Q.   But pursuant to those policies, they are policies that are established for the University of Houston System as a whole, correct?

A.   That's correct.

Q.   And there are also policies that, pursuant to the Board's authority, that are policies and rules that are issued for each component of the University of Houston System?

A:   That's correct.

. . .

Q:   [The MAPP policies]—those are enacted pursuant to the authority of the Board of Regents?

A:   No, that's the campus policies.

While Guyton's testimony suggests that the SAM's policies are issued "pursuant to [the Board of Regents' policies]," his testimony provides no evidence that the Board of Regents actually enacted the SAM.

Further, the portions of the SAM in the record make no mention of enactment by the Board of Regents. Instead, section 01.C.04 of the SAM designates the vice chancellor for administration as the "responsible party" and provides that the chancellor "approved" this particular memorandum—not the Board of Regents. Moreover, the Board of Regents' policies support the conclusion that the chancellor provides the authoritative act that makes the internal policies in the SAM effective and not the Board of Regents. Taking judicial notice of section 01.01.4 of the Board of Regents' policies, we note that "[t]he Chancellor is responsible for the development and adoption of the System Administrative Memoranda," which is consistent with section 01.C.04 of the SAM in the record. *See* TEX. R. EVID. 201; *see also Freedom Comm'cs, Inc. v. Coronado*, 372 S.W.3d 621, 623–24 (Tex. 2012) (taking judicial notice of facts outside the record to aid a determination of jurisdiction).

7

Barth contends that even if the SAM's policies are not enacted by the Board of Regents, they are still "law" under the Whistleblower Act because they were adopted pursuant to the Board of Regents' authority. In other words, Barth argues that it is irrelevant who adopts the rule or regulation so long as it is "adopted under a statute." We refuse to adopt such a broad construction. Barth's proposed construction ignores the interplay between the definition of "law" in the Whistleblower Act and the required reference to section 111.35 of the Education Code, which expressly authorizes only the Board of Regents to enact rules. *See* TEX. EDUC. CODE § 111.35. While the Board of Regents can certainly delegate its authority to establish rules, the interaction between the definition of "law" in the Whistleblower Act and section 111.35 demonstrates that the Legislature did not intend for whistleblower protection to extend to reports of violations of the SAM's rules. Accordingly, we conclude that the SAM cannot form the basis for a report of a violation of "law" because the SAM's administrative policies are not "rule[s] adopted under a statute" as required by the Whistleblower Act. *See* TEX. GOV'T CODE § 554.001(1).

Barth argues that, even if the SAM's administrative policies are not "law," the University's sovereign immunity is waived as to his claim because he believed in "good faith" that he was reporting a violation of law. The good-faith inquiry under the Whistleblower Act has both subjective and objective components, which require that Barth "must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience." *See City of Elsa v. Gonzales*, 325 S.W.3d 622, 626 (Tex. 2010). Barth provided undisputed testimony that he believed that violations of "contracting guidelines at the University" were violations of law. While Barth's belief satisfies the subjective prong, we hold that Barth failed

8

to satisfy the objective prong given his legal training, experience as a former practicing attorney, and familiarity with the University's rules from serving on the faculty senate. *See Grabowski*, 922 S.W.2d at 956. Therefore, we hold that the trial court lacked jurisdiction over this portion of Barth's claim.

Turning next to Barth's alternative reports of purported violations of state civil and criminal law, the University contends that none of Barth's reports were made to an appropriate law enforcement authority under the Act. We agree. The Whistleblower Act requires a claimant to show that he in "good faith" reported a violation of law to an "appropriate law enforcement authority." TEX. GOV'T CODE § 554.002; *see also Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002) (providing that the good-faith inquiry requires both a subjective and objective good-faith belief by the employee). An appropriate law enforcement authority is a part of a state entity that the employee in good faith believes is authorized (1) to regulate under or to enforce the allegedly violated law, or (2) to investigate or prosecute a violation of criminal law. TEX. GOV'T CODE § 554.002(b). We recently held that "purely internal reports untethered to the Act's undeniable focus on law enforcement—those who either make the law or pursue those who break the law—fall short." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello* ___ S.W.3d ___, ___ (Tex. 2013). We noted that:

> [F]or an entity to constitute an appropriate law-enforcement authority under the [Whistleblower] Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status.

9

*Id.* at ___. Accordingly, Barth was required to have an objective good-faith belief that he was reporting violations of law involving (1) section 37.10 of the Penal Code or (2) state law pertaining to the administration of government contracts to an entity that could have enforced, investigated, or prosecuted similar violations against third parties—not just an entity that can internally discipline its own employees for an alleged violation. *See id.* at ___.

First, none of the four people that Barth reported to regarding alleged violations of the Penal Code—the University's general counsel, CFO, internal auditor, and associate provost—could have investigated or prosecuted criminal law violations against third parties outside of the University. *See id.* at ___ ("[T]he [Whistleblower] Act protects those who report to authorities that issue legal directives, not authorities that follow them."). While Barth made a report to the University's police regarding the alleged criminal violation, the report was not made until June 2000, after the alleged retaliatory acts occurred. Barth argues that his compliance with section 01.C.04 of the SAM, which provides that suspected criminal activity should be reported to either the campus police, the University's system director, the director of internal auditing, the University's counsel, or the University's CFO, supports the proposition that he reported the violations to an "appropriate law enforcement authority." In addition, Barth contends that section 01.C.04 obligated any one of those people to report the alleged violations to the University's police. However, complying with an internal obligation is insufficient in this case. *See id.* (holding that "lodging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the Whistleblower Act"); *Tex. A&M Univ.–Kingsville v. Moreno*, ___ S.W.3d ___, ___ (Tex. 2013) (per curiam)

10

(holding that evidence by an employee at a state university showing that she reported an alleged violation of law to an authority that only oversaw internal university compliance was jurisdictionally insufficient under the Whistleblower Act); *Needham*, 82 S.W.3d at 321 (providing that evidence that an employee believed his report would be forwarded on to another entity that could prosecute the alleged violation was no evidence to support the objective prong of the good-faith test under the Whistleblower Act). The Whistleblower Act requires that the public employee report the alleged violation to an appropriate law enforcement authority. TEX. GOV'T CODE § 554.002(a). None of the people that Barth reported to could have investigated or prosecuted the alleged violations of criminal law.

Second, Barth never specifically cites to which state laws pertaining to government contracts that he believed Stutts violated, but nevertheless argues that the Government Code authorizes Guyton, as the University's internal auditor, to conduct audits and investigations. *See* TEX. GOV'T CODE §§ 2102.003, .007. Section 321.0136 defines "investigation" as "an inquiry into specified acts or allegations of impropriety, malfeasance, or nonfeasance in the obligation, expenditure, receipt, or use of state funds, or into specified financial transactions or practices that may involve such impropriety, malfeasance, or nonfeasance." *Id.* § 321.0136. However, the fact that Guyton can "inquire" into allegations of malfeasance does not mean that he can "regulate or enforce" the law, as required by subsection 554.002(b)(1) of the Whistleblower Act. Further, Barth provided no evidence that Guyton could have enforced state law or regulations regarding government contracts against any third party outside of the University.

11

In sum, given Barth's legal training and experience as a practicing attorney, Barth failed to meet the objective component of the good-faith test for reporting a violation of law to an appropriate law enforcement authority. *See Gentilello*, ___ S.W.3d at ___. Barth could not have believed in good faith that a violation of the SAM's administrative policies were violations of "law" under the Whistleblower Act, or that the University's general counsel, CFO, internal auditor, or associate provost possessed the power to either (1) regulate or enforce state civil law relating to the University's contracting with third parties or (2) prosecute or investigate the alleged criminal law violations. *See* TEX. GOV'T CODE § 554.002(b). Accordingly, the trial court lacked a basis for subject-matter jurisdiction over the entirety of Barth's claim.

Because the University's immunity from suit was not waived under the Whistleblower Act, the trial court lacked subject-matter jurisdiction over Barth's cause of action. Accordingly, we grant the petition for review and, without hearing oral argument, we reverse the judgment of the court of appeals and dismiss Barth's suit against the University. TEX. R. APP. P. 59.1.


OPINION DELIVERED: June 14, 2013

12