# IN THE SUPREME COURT OF TEXAS

No. 16-0773

WALLACE L. HALL, JR., IN HIS OFFICIAL CAPACITY AS A REGENT FOR THE
UNIVERSITY OF TEXAS SYSTEM, PETITIONER

v.

WILLIAM H. MCRAVEN, IN HIS OFFICIAL CAPACITY AS CHANCELLOR FOR THE
UNIVERSITY OF TEXAS SYSTEM, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE WILLETT, concurring.

In 1935 a stone carver named Wood Hall risked his life for nearly three weeks to chisel twelve words across the iconic centerpiece of the University of Texas campus: "Ye shall know the truth and the truth shall make you free."[1]



---

[1] *John* 8:32 (King James).

The UT Tower, the definitive landmark of a world-renowned "University of the first class,"[2] soars 307 feet. The 360-degree view from high above is spectacular, stretching far and wide.[3]

Once the site of unspeakable sorrow, the Tower is the signature backdrop for exultant commencements and is regularly illuminated in orange to mark athletic championships and academic honors—plus Texas Independence Day, of course.

When the words from John's Gospel were inscribed above the south entrance to the Tower's Victorian-Gothic Main Building, the building fittingly served as the University's central library, the place where truth was sought and curiosity quenched.

The architecture is commanding, and from the observation deck roughly two-dozen stories above Jesus's words, one can locate other Austin landmarks that help tell the story of perpetually curious UT System Regent Wallace Hall:

- Texas Capitol—where Governor Rick Perry appointed, and the Senate confirmed, Hall to the System's governing board, and where Regent Hall's dogged inquiries regarding various matters at flagship UT-Austin, most notably improper favoritism in admissions, sparked legislative and criminal investigations of his penchant for requesting records and posing uncomfortable questions;

- UT System Offices—where the Board of Regents heard the results of an external investigation confirming "frequent pressure" to admit students "connected to influential people,"[4] and where the Board adopted measures to deny Regent Hall access to a disk containing the unredacted records compiled in the investigation;

---

[2] TEX. CONST., art. VII, § 10.

[3] Proud Texans will put aside the fact that UT's majestic Tower was partly inspired by the city hall building in . . . Camden, New Jersey. As UT's esteemed architect, Paul Cret, sketched Tower designs, he gazed from his Philadelphia office across the Delaware River into Camden, whose new city hall dominated the skyline. *How "Texan" is the UT Tower?* https://jimnicar.com/2013/03/23/how-texan-is-the-ut-tower/ (last visited Jan. 24, 2017).

[4] Kroll Associates, *Final Report to the Office of the Chancellor of the University of Texas System*, at 39 (February 6, 2015).

- Texas Attorney General's Office—where the state's chief legal officer concluded that Regent Hall, as a System fiduciary charged with overseeing UT governance, has an inherent right of access to the records underlying the Kroll Report,[5] thus spurring the Board, two days later, to stiffen its information-access rules for Regents; and

- Texas Supreme Court—where the years-long saga ends, the Court having concluded that Regent Hall's *ultra vires* suit against the chancellor (the first by a regent against the University or the chancellor since UT opened in 1873 with eight professors and 221 students) cannot overcome the State's sovereign immunity.

UT sculptor Wood Hall is probably unrelated to UT Regent Wallace Hall. But both risked much in service to the twelve words of aspiration—both scholarly and heavenly—etched onto UT's most iconic building.

I join the Court's opinion. The doctrine of sovereign immunity, by insulating imprudence, is innately unfair to those wronged. The deal it strikes is often a raw deal.

\*　　\*　　\*

Everything is bigger in Texas, including political theater, and the odyssey of Wallace Hall is, like most Texas tales, filled with outsized personalities. Regent Hall has never been bashful about asking unwelcome questions. He is inquisitive. His detractors brand his inquiries an inquisition. He is probing. His decriers consider his probes a problem. He is questioning. His disparagers deem his questions a quandary. Regent Hall takes his oversight role seriously, spurred by a no-nonsense fiduciary duty to the University, including the specific statutory responsibility to "set campus admission standards."[6] But his questions about wrongdoing (and not just about

---

[5] Tex. Att'y Gen. Op. No. KP-0021 (2015). The Attorney General has filed a brief supporting Regent Hall in this case.

[6] TEX. EDUC. CODE § 51.352(d)(4).

3

admissions) have sown discord. The Board considers Regent Hall's request for the Kroll disk less oversight than overreach.

The Board of Regents did much to keep critical documents away from Regent Hall, instituting, as the Court describes it, "a governance structure that leaves Hall at the mercy of the Chancellor's discretionary legal determination."[7] But even before the Board's July ratification of the chancellor's proposed two-step process, the Hall hubbub had already incited rules changes. In May 2015, just two days after the Attorney General issued his pro-Hall opinion—concluding the Board "may not prohibit an individual regent from obtaining access to records in the possession of the University that are necessary to fulfill his duties as a regent"[8]—the Board made telling deletions to Regents' Rule 10101 § 3.1:

> In carrying out the duties and responsibilities referenced . . . above, it is the responsibility of each Regent to be knowledgeable . . . and each member of the Board of Regents has the right and authority to inform himself/herself as to the duties, responsibilities, and obligations of the member ~~in such a manner as they each may deem proper~~. Members of the Board of Regents are to be provided access to such information as ~~in their individual judgments~~ will enable them to fulfill their duties and responsibilities as Regents of the U.T. System.

Besides dialing back § 3.1's prior emphasis on Regents' individualized discretion and judgment, the Board that same day also (1) amended § 5.4.5 to require a Board majority (up from two votes) to approve a Regent's unresolved information request, and (2) adopted § 5.4.6 to delegate to the chancellor the duty of applying federal privacy law. The Attorney General's pro-access opinion predated—indeed, likely *provoked*—these Hall-proofing restrictions, and the Attorney General's brief in this Court argues that Regent Hall, as a member of the UT's governing board charged with

---

[7] *Ante* at ___.

[8] Tex. Att'y Gen. Op. No. KP-0021 (2015).

4

setting admissions policies, satisfies the federal "legitimate educational interest" standard that entitles him to access the complete, unredacted Kroll file.[9]

But Regent Hall did not sue his fellow Regents for limiting his right to access. He sued the chancellor, who carried out the Board's directive to strip out confidential material. The chancellor's record redactions were carried out at their behest. As the Court explains, his withholding of unredacted records did not exceed his granted authority; it was fully within it—*intra*, not *ultra*, his *vires*—per the Regents' express, parameter-setting command: Regents' Rule 10801 § 5.4.6. Regents' rules carry the same legal force as an enactment of the Legislature and prescribe the chancellor's specific responsibilities.[10] It may seem a distinction without a difference, to name the CEO instead of the Regents to whom the CEO reports. But amid the Byzantine complexity of sovereign-immunity law, which admittedly elevates form over substance, missing a procedural bull's-eye is sometimes fatal.[11] As the Court notes, the limits on Regent Hall's claimed right to complete access "are limits imposed by the Board . . . attributable to the Board and no one else."[12] We take suits as we find them, and this one, ably argued by both sides, named the chancellor who *enforced* the Regents' access restrictions rather than the Regents who *enacted* them.

---

[9] 20 U.S.C. § 1232g(b)(1)(A).

[10] *Univ. of Hous. v. Barth*, 403 S.W.3d 851, 855 (Tex. 2013).

[11] For example, under the Texas Tort Claims Act's election-of-remedies provision, "if suit is filed against a government employee in that employee's official capacity, then '[o]n the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant' within thirty days." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013) (quoting Tex. Civ. Prac. & Rem. Code § 101.106(f)).

[12] *Ante* at ___.

The Court recognizes the disquieting concerns raised by the Board's access restrictions: "We are not unsympathetic to Hall's plight."[13] Under Texas law, individual Regents owe an individual duty to exercise individual judgment.[14] That necessarily requires individual access. The Legislature does not see a Regency as a sinecure, but as a solemn fiduciary committed to institutional accountability, including blowing a whistle on potential improprieties. The Board's new access hurdles have the potential to short-circuit unwanted inquiries by Regents who, like Wallace Hall, wield an abundance of verve and resolve. The Court concedes as much, noting the access scheme perhaps "elevates the status quo above transparency,"[15] something Machiavelli warned of 500 years ago: "the reformer has enemies in all those who profit by the old order, and only lukewarm defenders in all those who would profit from the new order."[16]

*     *     *

*"Ye shall know the truth, and the truth shall make you free*."[17]

---

[13] *Ante* at ___.

[14] "*Each member* of a governing board has the legal responsibilities of a fiduciary in the management of funds under the control of institutions subject to the board's control and management." TEX. EDUC. CODE § 51.352(e) (emphasis added). The Regents' own rules still underscore individualized responsibility. For example, Regents' Rule 10101 § 3.1, swiftly diluted after the Attorney General's May 2015 opinion, still stresses "it is the responsibility of *each Regent* to be knowledgeable" adding, "*each member* of the Board of Regents has the right and authority to inform himself/herself as to the duties, responsibilities, and obligations of the member." (emphases added).

[15] *Ante* at ___.

[16] NICCOLO MACHIAVELLI, THE PRINCE AND THE DISCOURSES 21 (Luigi Ricci trans., McGraw Hill Educ. 1st ed. 1950) (1532).

[17] *John* 8:32 (King James).

I am not a Longhorn alumnus. But I revere what is doubtless the most-read inscription on the Forty Acres, an inscription I hope, notwithstanding today's result, will hearten future truth-seekers and truth-tellers . . . til Gabriel blows his horn.[18]

_____

Don R. Willett
Justice

**OPINION DELIVERED:** January 27, 2017

---

[18] LEWIS JOHNSON & JOHN LANG SINCLAIR, "THE EYES OF TEXAS" (1902).