COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS, | § | No. 08-11-00235-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 6 |
| | § | of El Paso County, Texas |
| LAURA G. RODRIGUEZ, | § | (TC# 2010-1710) |
| Appellee. | | |

## **O P I N I O N**

In this whistleblower case, the Office of the Attorney General of Texas ("OAG") appeals from a portion of the trial court's order denying its plea to the jurisdiction. In three issues for review, the OAG raises one primary complaint that Laura Rodriguez ("Rodriguez") failed to report a violation of law to an "appropriate law enforcement authority" as required by the Whistleblower Act. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Rodriguez was employed as a field regional administrator in the OAG's child support division. In January 2009, she discovered that her former executive assistant, Deborah Galindo ("Galindo"), had added a dependent to her state-sponsored insurance plan whom Galindo claimed was a niece, but who was, in fact, the girlfriend of Galindo's son. Believing that Galindo had committed insurance fraud and tampered with governmental records, Rodriguez -- acting pursuant to OAG policy -- reported her suspicions to her immediate supervisors. One of them advised

Rodriguez to report her concerns anonymously to the Ethics Advisor, the individual designated by the Attorney General to administer the OAG's Fraud, Waste, and Abuse Prevention Program. Rodriguez did so. Shortly after receiving the anonymous report, the Ethics Advisor sent the OAG's Deputy Attorney General for Criminal Justice a memorandum asking for his assistance "[b]ecause allegations of fraud might involve criminal conduct." Following an investigation by the OAG's Criminal Investigation Division ("CID")[1], the Ethics Advisor released a report in which he concluded that Galindo had not committed fraud but had misstated information. He recommended that human resources take appropriate disciplinary action. Galindo was suspended from work for five days.

In the months that followed, Rodriguez was demoted and given a poor evaluation. She was eventually terminated in April 2010, after the OAG's Ombudsman released a report concerning her claim of retaliation for reporting Galindo. Thereafter, Rodriguez sued the OAG for violations of the Whistleblower Act. She alleged that she had a good faith belief that Galindo violated the law and that she had reported these violations to the entities that had the authority to "investigate, enforce, regulate, or prosecute criminal laws involving insurance fraud or tampering with governmental records . . . ." Rodriguez identified these entities as "the Fraud, Waste, and Abuse Prevention Program and/or the Criminal Investigation Division of [the OAG] . . . . According to Rodriguez, her report resulted in adverse personnel actions when she was demoted and terminated.

The OAG filed a plea to the jurisdiction asserting that Rodriguez's claims were barred by sovereign immunity because she failed to allege the jurisdictional facts necessary to invoke the

---

[1] After investigators from the OAG's Criminal Investigation Division contacted Rodriguez in response to her anonymous report and, while they were interviewing her, Rodriguez reported her suspicions that Galindo had violated the law.

Whistleblower Act. In particular, the OAG maintained that Rodriguez failed to allege that she reported a violation of law to an "appropriate law enforcement authority" because none of the persons to whom she made her report had the authority to prosecute criminal law violations. The trial court denied the plea as it pertained to this basis, but granted it as it pertained to Rodriguez's failure to grieve her claims and failure to file the lawsuit timely. This interlocutory appeal follows.[2]

## STANDARD OF REVIEW

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether the trial court has subject matter jurisdiction is a question of law, which we review *de novo*. *Id*. at 226. A plaintiff bears the burden of alleging facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Id*. In determining whether a plaintiff has done so, we construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Id*. In determining a plea to the jurisdiction, we can also consider evidence, and must do so when necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If evidence negates the existence of jurisdictional facts as a matter of law, the trial court should grant the plea. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008). However, if evidence does not negate jurisdiction as a matter of law or if it creates a fact issue, the trial court should deny the plea. *Id*.

## THE WHISTLEBLOWER ACT

The Whistleblower Act contains an express waiver of immunity from suit. Specifically, a public employee who alleges a violation of the Act may sue the employing state or local

---

[2] *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(8)(West Supp. 2012)(permitting state agency to file interlocutory appeal from denial of plea to the jurisdiction).

government entity for the relief provided by the Act. TEX.GOV'T CODE ANN. § 554.0035 (West 2012). In determining whether an employee has alleged a violation, we consider whether the factual allegations would actually constitute a violation of the Act. *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). However, a plaintiff need not prove her claim to satisfy the jurisdictional hurdle, and the burden of proof with respect to the jurisdictional facts does not involve a significant inquiry into the substance of the claims. *Id*.

### *Appropriate Law Enforcement Authority*

Under the Whistleblower Act, a state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, an employee who makes a good faith report to an appropriate law enforcement authority that the entity or another employee has violated the law. TEX.GOV'T CODE ANN. § 554.002(a); *Lueck*, 290 S.W.3d at 878. As defined by the Act, a report is made to an appropriate law enforcement authority if the authority is "a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id*. at § 554.002(b). Good faith, in the context of an appropriate law enforcement authority, means that: "(1) the employee believed the governmental entity was authorized to (a) regulate under . . . enforce . . . (b) investigate or prosecute a violation of . . . law; and (2) the employee's belief was reasonable in light of the employee's training and experience." *Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002).

### *Report to the Ethics Advisor*

On appeal, the OAG challenges the reasonableness of Rodriguez's belief that the Ethics

4

Advisor, as head of the Fraud, Waste, and Abuse Prevention Program, and the OAG's Criminal Investigation Division were appropriate law enforcement authorities.[3] Specifically, the OAG argues that Rodriguez's belief could not have been reasonable because the Ethics Advisor's authority to discipline employees *internally* did not equate to authority to regulate under, enforce, prosecute, or investigate criminal violations, which, the OAG maintains, Rodriguez knew were reported to and handled by an *outside* law enforcement agency. We are not persuaded by this argument.

The evidence supports Rodriguez's belief that the Ethics Advisor was an appropriate law enforcement authority. Rodriguez produced the OAG's "Agency Integrity Program" policy providing for the promulgation of rules, practices, and standards to "reduce the risk of fraud, waste, and abuse in the workplace." The policy covers "unethical, fraudulent, and/or illegal conduct" and is "designed to provide a method to identify, prevent, detect, and report" such conduct. As defined by the policy, fraud is "the use of one's occupation for obtaining personal benefit (including benefit for family/friends) through the **deliberate misuse or misapplication** of the OAG's resources or assets." [Emphasis in original]. The policy requires an employee to report unethical, fraudulent, and/or illegal conduct to certain identified individuals, including the employee's immediate supervisor and the Ethics Advisor.[4] Indeed, the policy mandates that any person who receives a report of fraud has a duty to refer the matter immediately to the Ethics

---

[3] The OAG also challenges the adequacy of Rodriguez's reports to her immediate supervisors and the Ombudsman. However, Rodriguez did not identify these individuals in her Second Amended Petition or in her original and supplemental responses to the OAG's plea to the jurisdiction as individuals whom she believed were appropriate law enforcement authorities. She merely identified them as individuals to whom she reported her suspicions. While we can consider evidence in determining a plea to the jurisdiction, the evidence must be relevant to the jurisdictional issue. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Since Rodriguez did not identify her immediate supervisors and the Ombudsman as "appropriate law enforcement authorities," the status of these individuals as such is irrelevant to the jurisdictional inquiry. We therefore decline to address the OAG's challenge to the adequacy of Rodriguez's report to her supervisors and the Ombudsman.

[4] The policy permits an employee to report unethical, fraudulent, and/or illegal conduct anonymously.

5

Advisor, the person designated by the Attorney General as the individual "having the exclusive authority" to investigate "activity which possible constitutes a violation of law. . . ." In his deposition, the Ethics Advisor testified that "employees can report fraud, waste, and abuse . . . directly to me." And as we have already noted, the Ethics Advisor asked the OAG's Deputy Attorney General for Criminal Justice for his assistance in investigating the fraud allegation because it "might involve criminal conduct."

Essentially, Rodriguez produced evidence establishing that OAG employees were not just *instructed* but were *required* to report unethical, fraudulent, and/or illegal conduct to their supervisors and the Ethics Advisor. Rodriguez also produced evidence that the Ethics Advisor had the authority to investigate allegations of fraud involving criminal conduct, and, in fact, exercised that authority here. In light of the foregoing and indulging all reasonable inferences in favor of Rodriguez, we conclude that she produced evidence of her good faith belief that the Ethics Advisor was authorized to investigate criminal laws related to fraud and that her belief was reasonable in light of her training and experience.[5] *See Moreno v. Tex. A&M Univ.-Kingsville*, 339 S.W.3d 902, 912-13 (Tex.App.--Corpus Christi 2011, pet. filed)(holding that whistleblower produced sufficient evidence of her good faith belief by reporting suspected violations of the tuition waiver provision, as required by university policy, to university president who had the power to enforce compliance with the tuition waiver provision); *Univ. of Tex. Sw. Med. Ctr. At Dallas v. Gentilello*, 317 S.W.3d 865, 871 (Tex.App.--Dallas 2010, pet. granted)(holding that whistleblower produced sufficient evidence of good faith by reporting Medicaid and Medicare violations to his supervisor who set policies and had power to investigate violations); *see also Tex.*

---

[5] Because we conclude that Rodriguez's good faith belief that the Ethics Advisor was an appropriate law enforcement authority was reasonable, we need not address Rodriguez's report to the OAG's Criminal Investigation Division. *See* TEX.R.APP.P. 47.1 (requiring appeal court to issue an opinion that is as brief as possible, but that addresses every issue raised and *necessary* to dispose of the appeal).

6

*Dep't of Human Servs. v. Okoli*, 317 S.W.3d 800, 811 (Tex.App.--Houston [1st Dist.] 2010, pet. filed)(holding that whistleblower produced sufficient evidence of his good faith belief by citing to an internal policy requiring him to report misconduct to his supervisor and to other individuals situated higher in the agency's organizational structure).

Nor are we persuaded by the OAG's reliance on *Needham* and *Univ. of Tex. at San Antonio v. Wells*, No. 04-10-00615-CV, 2011 WL 446642 (Tex.App.--San Antonio Feb. 9, 2011, no pet.)(mem. op.) and upon a specific sentence in the OAG's "Agency Integrity Program" policy. *Needham* and *Wells* hold that an employee does not have a reasonable belief that his or her employer is an appropriate law enforcement authority if the employer itself does not have the authority to do anything about reported illegal activities other than to conduct an internal investigation, to discipline its employees, and to refer reports of illegal activities to other entities. *See Needham*, 82 S.W.3d at 321 (holding that Texas Department of Transportation employee who believed that his superiors would forward his report of driving while intoxicated to another entity for prosecution did not have a reasonable belief that the department was an appropriate law enforcement authority); *Wells*, 2011 WL 446642, at *2 (holding that university employee who was told that her reports of fraud would have to be investigated by the police, not by the particular department to which she reported the allegations, did not have a reasonable belief that the university was an appropriate law enforcement authority).

Rodriguez's allegations do not involve the mere internal discipline imposed against Galindo for fraudulently naming a dependent. Rather, Rodriguez alleged that Galindo violated the criminal law and produced evidence that the Ethics Advisor had the authority to investigate whether Galindo had violated the law. Contrary to the OAG's assertion, the OAG's "Agency

7

Integrity Program" policy does not mandate that allegations of criminal violations be reported to and handled by an outside law enforcement agency. Rather, the policy discusses the range of penalties an employee who violates the "Agency Integrity Program" might face, which, in the case of "potential criminal offenses," includes the possibility of a report to "the appropriate law enforcement agency." Having determined that Rodriguez produced evidence that she had a good faith belief that the OAG's Ethics Advisor was authorized to investigate criminal laws related to fraud and that her belief was reasonable in light of her training and experience, we hold that the trial court did not err in denying the OAG's plea to the jurisdiction. We affirm the judgment of the trial court below.

August 22, 2012

ANN CRAWFORD MCCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior)(Sitting by Assignment)

8