**AFFIRMED; Opinion Filed June 16, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00632-CV

**OFFICE OF THE ATTORNEY GENERAL, Appellant**
**V.**
**GINGER WEATHERSPOON, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC09-06233**

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Evans

The Office of the Attorney General appeals the denial of its plea to the jurisdiction in this suit under the Whistleblower Act. The OAG contends the trial court erred in concluding Ginger Weatherspoon made a good faith report of a violation of law to an appropriate law enforcement authority and in determining that it had subject matter jurisdiction over Weatherspoon's claims. Because we conclude Weatherspoon sufficiently alleged a claim under the Act to invoke subject matter jurisdiction, we affirm the trial court's order.

### FACTUAL BACKGROUND

As the basis for her whistleblower suit, Ginger Weatherspoon alleged the following facts. Weatherspoon began working for the OAG as an assistant attorney general in the Child Support Division in July 2006. According to Weatherspoon, on February 1, 2008, two senior

regional attorneys with the OAG, James Jones and Harry Monck, ordered her to report her recent interactions with a district judge. In response, Weatherspoon sent them an e-mail containing facts about a conversation with the judge. Four days later, Weatherspoon received an e-mail with an attached affidavit for her to sign concerning her conversation. A managing attorney with the OAG, Paula Crockett, told her they intended to use the affidavit as evidence to have the judge recused from hearing cases involving the OAG. The affidavit was also going to be used to support a judicial misconduct complaint against the judge. Weatherspoon refused to sign the affidavit stating that she believed it misrepresented various facts regarding her conversation with the judge and mischaracterized the tone and nature of the conversation.

According to Weatherspoon, on February 11, Jones sent Weatherspoon an e-mail ordering her to sign the affidavit. Weatherspoon responded that the affidavit was false as written and asked if she could revise it. Jones rejected Weatherspoon's request and Weatherspoon again refused to sign the affidavit. When Jones continued to insist that Weatherspoon sign the affidavit, Weatherspoon reported the matter to Crockett.

Weatherspoon alleged that the next day, Jones ordered her to appear at the OAG administrative office to sign the affidavit. When Weatherspoon continued to refuse to sign, Jones began to yell and slammed his fist on the desk. Weatherspoon was then ordered into a separate room and was told she could not leave until she had prepared a written statement against the judge. Weatherspoon attempted to make a report about Jones's conduct to his direct supervisor, but Jones prevented her from doing so. Weatherspoon was finally allowed to leave after she prepared a written statement concerning her conversation with the judge. According to Weatherspoon, the report she created was accurate.

Weatherspoon stated that, immediately after being allowed to leave, she contacted Crockett to report Jones's attempts to force her to sign the allegedly false affidavit.

–2–

Weatherspoon asserted that Jones was exerting pressure in his official capacity in violation of the Texas Penal Code provisions concerning abuse of official capacity and official oppression. Weatherspoon further asserted that Jones's insistence that she sign a false affidavit constituted subornation of perjury in violation of federal law. Weatherspoon reported the same violations to her managing attorney, an attorney trainer, an attorney in the open records department, and to Alicia Key, the Child Support Director for the OAG, and Charles Smith, the Deputy Director of Child Support. Key told Weatherspoon that the Attorney General wanted Key to personally apologize for what happened and that "they would look into it and there would be a full investigation." Key also told Weatherspoon not to discuss the matter with anyone.

The OAG has mandatory procedures for reporting violations of law occurring within its office. The OAG Policies and Procedures Manual states that,

> [i]t is the policy of the Office of the Attorney General that all potential criminal violations be referred to the appropriate division of the Office of Special Investigations. Employees shall notify their division chief upon learning of a potential criminal violation. This includes violations discovered in the performance of their regular duties or assignments and/or requests for assistance from outside agencies. It is the responsibility of each division chief, or their designee, to collect the basic information regarding the nature of the criminal violation, and then refer that information to the Office of Special Investigations utilizing the appropriate form. . . . Under no circumstances shall an employee not assigned to OSI refer a criminal violation encountered in the course of their official duties to an outside law enforcement agency unless exigent circumstances exist that threaten the immediate loss of life, and then only with the knowledge and approval of Executive Administration.

Weatherspoon claimed that, after she reported the alleged violations in compliance with the OAG's policy, she was retaliated against and eventually terminated from her position. Weatherspoon exhausted the OAG's grievance procedures and filed this suit asserting that her termination was done in violation of the Whistleblower Act.

The OAG filed a plea to the jurisdiction contending that Weatherspoon failed to allege sufficient facts to establish a whistleblower violation and a consequent waiver of the OAG's

sovereign immunity. The OAG also filed a no-evidence motion for summary judgment on the same grounds. Weatherspoon responded and submitted an affidavit setting forth the facts she contended formed the basis of her claims. The trial court denied the OAG's plea and motion for summary judgment. The OAG then brought this interlocutory appeal from the trial court's denial of its plea to the jurisdiction.

## ANALYSIS

Whether a trial court has subject matter jurisdiction is a question of law. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex. 2002). We review *de novo* whether a plaintiff has set forth facts that affirmatively demonstrate a trial court's subject matter jurisdiction. *See Tex. Dep't. of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). Where a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, the court considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Id.* at 227. If the evidence does not negate jurisdiction as a matter of law or if it creates a fact issue, the trial court should deny the plea. *See Office of Attorney Gen. of Tex. v. Rodriguez*, 420 S.W.3d 99, 102 (Tex. App.–El Paso 2012, no pet.).

Section 554.0035 of the Texas Government Code expressly waives sovereign immunity for claims brought under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.0035 (West 2012). For immunity to be waived, however, the plaintiff must be a public employee and properly allege a violation of the Act. *See State v. Lueck,* 290 S.W.3d 876, 881 (Tex. 2009). We determine whether the jurisdictional prerequisite of alleging a violation has been met by examining the elements of a whistleblower claim as set forth in section 554.002 of the government code. *See Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 186 (Tex. App.—Dallas 2012, pet. denied).

–4–

Under section 554.002, "a state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *See* TEX. GOV'T CODE ANN. § 554.002(a). A report is made to an appropriate law enforcement authority if "the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b).

In this case, Weatherspoon alleged that she made a report concerning a fellow public employee who had allegedly committed violations of criminal law, including abuse of official capacity, official oppression, and suborning perjury, and that her employment was terminated as a result. Weatherspoon further alleged that she made her reports to numerous people including the head of her division at the OAG as required by the OAG's policies and procedures manual. On appeal, the OAG presents a single issue contending these allegations fail to show that Weatherspoon made her report to an "appropriate law enforcement authority" as required by the Act. In making this argument, the OAG relies heavily on cases holding that reports made internally to one's own employer are generally insufficient to invoke the Act's protections. *See e.g. Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 685–86 (Tex. 2013). This is because an employer's ability to require internal compliance with a law does not equate with the power to regulate or enforce the law, or investigate or prosecute violations of the law as required by the Act's definition of "appropriate law enforcement authority." *See id.* As noted by the Texas Supreme Court, however, reports made internally may satisfy the requirements of the Act if the employer has not only internal authority to require compliance, but also the power to enforce, investigate, or prosecute violations against third parties outside the entity itself. *Id.* at

686.  For example, a police officer may report a criminal act committed by her partner to the appropriate supervisor or division of the police department and come under the protections of the Act. *Id*.

The OAG argues that Weatherspoon did not make her report to an appropriate law enforcement authority because she reported the alleged criminal violations only to her division head and others in the Child Support Division.  It is undisputed that the Child Support Division does not address allegations against third parties of criminal fraud and abuse of office.  It is also undisputed, however, that the Child Support Division is part of the OAG.  The evidence presented by Weatherspoon shows that the OAG, through its Office of Special Investigations, has the authority to investigate complaints not only of internal fraud and corruption, but also fraud and corruption by third parties.  Furthermore, the OAG has concurrent jurisdiction with the consent of the local prosecutor to prosecute abuses of official capacity and official oppression by third parties.[1]  *See* TEX. PENAL CODE ANN. § 39.015 (West 2011).

Pursuant to the OAG's own policies and procedures, Weatherspoon's division head at the OAG was required to refer Weatherspoon's report to the OAG's Office of Special Investigations.  As stated above, section 554.002(b) of the government code provides that a report is made to an appropriate law enforcement authority if the authority to whom the report is made is "part of" a governmental entity that the employee believes in good faith is authorized to investigate or prosecute a violation of criminal law.  Because the Child Support Division and, consequently, its

---

[1] The OAG suggests that because its authority to prosecute cases of abuse of official capacity and official oppression requires the consent of the local county or district attorney, its power is not "free-standing" as required by the Texas Supreme Court's opinion in *Gentilello*.  *See Gentilello*, 398 S.W.3d at 682.  The term "free-standing" was used by the court to distinguish entities that must refer suspected violations elsewhere for investigation or prosecution.  *Id*.  The requirement that an entity receive consent to prosecute a criminal violation is fundamentally different than the entity having no authority to prosecute the violation at all.  Furthermore, the OAG needs no consent to *investigate* allegations of abuse of office even if *prosecution* in court of such matters by the OAG requires consent of local prosecutors.  The power to investigate such allegations is, standing alone, sufficient to make it an appropriate law enforcement authority.  *See* TEX. GOV'T CODE ANN. § 554.002.

division head are "part of" the OAG, and the OAG, through its Office of Special Investigations, is authorized to investigate or prosecute violations of criminal law such as those alleged by Weatherspoon, Weatherspoon's report to her division head constitutes a report made to an appropriate law enforcement authority.

The facts presented here are similar to those presented in *Office of Atty. Gen. of Tex. v. Rodriguez*. *See Rodriguez*, 420 S.W.3d at 100–01. In *Rodriguez*, the plaintiff, like Weatherspoon, was an employee in the OAG's Child Support Division. *Id*. at 100. The plaintiff suspected that her assistant was committing insurance fraud and tampering with governmental records. *Id*. According to the OAG policy in place at the time, employees were required to report unethical, fraudulent, or illegal conduct to both an immediate supervisor and the ethics advisor. *Id*. at 103. The plaintiff first made her report to her supervisor and, after her supervisor told her to do so, made a second report to the ethics advisor. *Id*. at 100. The ethics advisor then requested an investigation be conducted by the Criminal Investigation Division. *Id*. Following the investigation, the ethics advisor released a report concluding that the assistant had not committed fraud, but had misstated information. *Id*. at 101. The plaintiff was later terminated and she brought suit against the OAG under the Whistleblower Act. *Id*.

The OAG filed a plea to the jurisdiction and argued, as it does here, that the plaintiff failed to show she made her report to an appropriate law enforcement authority because none of the persons to whom she made her report had the authority to prosecute violations of criminal law. *Id*. The court rejected this argument noting that the plaintiff made her report to those persons she was required to make her report to pursuant to the OAG's policies. *Id*. at 103. The court further stated that the plaintiff's allegations did not involve matters of "mere internal discipline," but rather allegations of violations of criminal law that the ethics advisor along with the OAG's Criminal Investigation Division had the authority to investigate. *Id*. Based on these

jurisdictional facts, the court concluded the trial court correctly denied the OAG's plea to the jurisdiction. *Id*. at 104.

The OAG contends *Rodriguez* is distinguishable on the basis that the plaintiff made her report directly to the ethics advisor who had the power to conduct an investigation, and not just to her supervisor in the Child Support Division as was done by Weatherspoon. We do not find this distinction persuasive. The OAG policy in effect in *Rodriguez* required the plaintiff to report illegal conduct to *both* her supervisor *and* the ethics advisor. *See Rodriguez*, 420 S.W.3d at 103. In contrast, the policy under which Weatherspoon was operating required her to report suspected criminal violations to *only* her division head. The division head receiving the report was then required to collect information regarding the allegation and forward it to the Office of Special Investigations. Under these mandatory policies, a report made to a division head is, in effect, a report made to the Office of Special Investigations, both of which are "part of" the OAG, consistent with section 554.002(b) of the government code. *See* Tex. Gov't Code Ann. § 554.002(b). As discussed above, the OAG is an appropriate law enforcement authority.

The OAG argues that compliance with an internal procedure for reporting criminal violations and the belief that the report will be forwarded to those with an ability to conduct an investigation or enforce the law is insufficient to meet the requirements of the Act. While this may be true under some circumstances, the facts of this case lead to a different result.

In *University of Houston v. Barth*, the Texas Supreme Court held that compliance with the university's policy for reporting suspected criminal activity to a school official combined with the possibility that the report would be forwarded to the university police did not constitute a report to an appropriate law enforcement authority. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 858 (Tex. 2013). The plaintiff in *Barth* made his report of suspected criminal activity to various university officials including the chief financial officer, general counsel, dean, internal

auditor, and associate provost. *Id*. at 853. He argued, among other things, that each of those people was "obligated" to report the alleged violations to the university police. *Id*. at 857–58. The *Barth* opinion does not indicate that there was any showing either that the policy at issue *required* the person receiving the report of suspected criminal activity to forward it on specifically to the university police or that the university police had authority to investigate or prosecute persons not affiliated with the university, i.e. third parties. *See Univ. of Houston v. Barth*, 365 S.W.3d 438, 441 (Tex. App.–Houston [1st Dist.] 2011), *rev'd*, 403 S.W.3d 851 (Tex. 2013) (policy obligated employees to report suspected criminal activity to *one* of several listed officials including chief financial officer, general counsel, and university police). Because the policy did not require anything other than an internal report to persons without the power to either investigate or prosecute alleged violations of law, compliance with the policy was insufficient under the Act. *See Barth*, 403 S.W.3d at 858.

Similarly, in *Texas Department of Transportation v. Needham*, the plaintiff reported a co-worker's alleged criminal conduct to his supervisors at the Department of Transportation. *See Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). The plaintiff argued that he reasonably believed either that his employer was an appropriate law enforcement authority or that his employer could forward his report on to another entity to prosecute the alleged violations. *See id*. at 318–19. The supreme court concluded that the Department of Transportation was not an appropriate law enforcement authority and the plaintiff's subjective belief that his report could be forwarded to another entity was not sufficient to meet the Act's requirements. *Id*. at 321. Belief in the *possibility* that a report will be sent to an appropriate law enforcement authority does not equate with knowledge that the person to whom one reports works for an appropriate law enforcement authority and is *required* to forward the report to the

appropriate persons within that same entity for investigation or prosecution. It is the latter circumstance that is presented here.

In this case, Weatherspoon was specifically directed to report suspected criminal violations by her co-workers to her division head at the OAG. The division head at the OAG was then required to forward Weatherspoon's report to the OAG's Office of Special Investigations. The OAG itself and, more specifically, the Office of Special Investigations, is an appropriate law enforcement authority with respect to the criminal violations Weatherspoon alleged. Accordingly, there was more than a mere possibility that Weatherspoon's report would reach persons with specific authority to investigate or prosecute the alleged criminal violations. Weatherspoon made her report to persons employed by an appropriate law enforcement entity who were required to ensure that her allegations were reported to the proper persons and she was assured that this had been done. Under these facts, we conclude Weatherspoon has sufficiently alleged that she made good faith report of a violation of law by another public employee to an appropriate law enforcement authority. We resolve the OAG's sole issue against it.

We affirm the trial court's order denying the OAG's plea to the jurisdiction.


/David Evans/
DAVID EVANS
JUSTICE

130632F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

OFFICE OF THE ATTORNEY GENERAL, Appellant

No. 05-13-00632-CV      V.

GINGER WEATHERSPOON, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC09-06233.
Opinion delivered by Justice Evans.
Justices O'Neill and Lang-Miers participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant OFFICE OF THE ATTORNEY GENERAL's plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee GINGER WEATHERSPOON recover her costs of this appeal from appellant OFFICE OF THE ATTORNEY GENERAL.

Judgment entered this 16th day of June, 2014.

/David Evans/
DAVID EVANS
JUSTICE