# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00303-CV

**Texas Health and Human Services Commission and Kyle L. Janek, substituted in his official capacity for former Commissioner Thomas M. Suehs, Appellants**

**v.**

**F. Michael McMillen, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. D-1-GN-12-002004, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, appellants the Texas Health and Human Services Commission (HHSC) and Kyle L. Janek, HHSC's Executive Commissioner, challenge the trial court's denial of their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Appellee F. Michael McMillen, a former employee of HHSC, sued HHSC and Janek in his official capacity alleging violations of the Texas Whistleblower Act and the free speech clause of the Texas Constitution. *See* Tex. Const. art. I, § 8; Tex. Gov't Code §§ 554.001–.010 (Whistleblower Act). For the reasons that follow, we reverse the trial court's order and dismiss McMillen's claims for lack of jurisdiction.

**BACKGROUND**

McMillen, an attorney with over twenty years of experience, was employed by HHSC's Office of Inspector General (OIG) as Deputy Counsel from November 2009 until April 2012. He was placed on administrative leave at the beginning of January 2012, and his employment was terminated at the end of April 2012.

McMillen sued appellants in July 2012 alleging whistleblower and free speech violations. McMillen contends that he was terminated and retaliated against because of a memorandum that he prepared in June 2011. He prepared the memorandum at the direction of his supervisor, Karen Nelson, who was OIG's Chief Counsel. Nelson assigned McMillen the task of researching whether there was legal authority to support or, conversely, prohibit HHSC's ongoing practice of accepting payments from Medicaid benefit recipients under a particular program. In the memorandum, McMillen concluded that he "[did] not find a legal basis to justify HHSC/OIG's current practice of accepting repayments" and recommended that "HHSC/OIG cease accepting them."[1] To support his conclusion, he cited a 1997 letter from the "U.S. Department of Health & Human Services/Center for Medicaid and State Operations" to the "State Medicaid Director (of each state)" and a class action suit in California. Nelson provided copies of the memorandum to OIG deputies in September 2011. McMillen also gave a copy to OIG's Deputy Inspector General of

---

[1] The parties' appellate briefs and exhibits submitted to the trial court under seal were submitted under seal to this Court. Because McMillen prepared the June 2011 memorandum as an attorney employed by HHSC, HHSC has asserted the attorney-client privilege. *See* Tex. R. Evid. 503 (lawyer-client privilege); *In re XL Specialty Ins.*, 373 S.W.3d 46, 49 (Tex. 2012) ("Confidential communications between client and counsel made to facilitate legal services are generally insulated from disclosure." (citation omitted)).

Internal Affairs and its Inspector General in December 2011 and to HHSC's Executive Commissioner in January 2012. OIG's Internal Affairs Division conducted an investigation of McMillen's allegations and concluded that they were "unsubstantiated."

Appellants filed a plea to the jurisdiction supported by the affidavit of Nelson. They contended that McMillen was terminated for poor work performance and that the June 2011 memorandum was incomplete and failed to analyze the legal issues assigned to him by Nelson. As to McMillen's whistleblower claim, appellants contended that he had failed to invoke the trial court's jurisdiction because he had not alleged and could not allege a "good faith report" of a "violation of law" to an "appropriate law enforcement authority." *See* Tex. Gov't Code § 554.002. As to his free speech claim, appellants contended that McMillen had not alleged and could not "allege an exercise of free speech for which he was the victim of retaliation."

McMillen filed a response with evidence, including an affidavit by McMillen, excerpts from the depositions of Nelson and Douglas Wilson, who was the Inspector General, discovery responses, and a copy of pleadings from the California class action referenced in the June 2011 memorandum.[2] In that case, the plaintiffs alleged that the California Department of Health Services was violating the federal prohibition in section 1396p of Title 42 of the United States Code against the recovery of Medicaid benefits correctly paid. *See* 42 U.S.C. § 1396p(b)(1).[3]

---

[2] In her deposition, Nelson testified about OIG generally, her supervision of McMillen leading up to his termination, and the June 2011 memorandum. She testified that, after she received the memorandum from McMillen, she informed him that it was incomplete and asked him to address additional issues but that he did not revise the memorandum. Wilson also testified about OIG, its Internal Affairs Division, and McMillen's allegations.

[3] Section 1396p(b)(1) states:

In his affidavit, McMillen averred about his employment with OIG. He averred that he was not terminated for poor work performance but because of the memorandum and "[his] additional reports which offended [his] supervisors" and that he was not told that he was inadequately performing his job duties before he made his "report" in the memorandum.[4] He identified section 1396p of Title 42 of the United States Code as the law "in [his] good faith belief" that HHSC was violating "by improperly taking payment reimbursements from Medicaid recipients for procedures validly and legally paid for by the federal government." He also cited state statutes governing HHSC to support his conclusion that "none of these [state] laws appears to allow HHSC to accept reimbursements in the situation I was asked to investigate."

---

No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals: [inapplicable exceptions].

42 U.S.C. § 1396p(b)(1).

[4] McMillen averred:

I was never told my job was in jeopardy or that I was providing inadequate legal services (or not doing my job in any material sense) until after my reports were made and after the defendants "needed" a reason to terminate my employment. I was doing my job to the best of my ability and was never told that I had any serious deficiencies or that my job was in jeopardy until after I made my report and after I began agitating for it to be taken up the chain, properly investigated, and the practices that I believed to be illegal (and still believe *are* illegal) stopped. . . .

It was, I believe, my not "letting this go" and making my report up the chain, including to the Inspector General, the IAD, and the Commissioner himself that "got me fired."

After a hearing, the trial court denied appellants' plea to the jurisdiction. This appeal followed.

## ANALYSIS

Appellants raises three issues. They contend that the trial court erred by asserting subject matter jurisdiction over McMillen's whistleblower claim "because the pleadings and evidence, taken as true did not establish the minimum jurisdictional requisites," that the trial court erred by asserting subject matter jurisdiction over McMillen's free speech claim "because the pleadings, taken as true, did not establish the minimum jurisdictional requisites," and that the trial court erred by assuming jurisdiction on the basis of attorney-client privileged evidence over the client's objections.

### Standard of Review

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id*. We construe the pleadings liberally in favor of the plaintiff. *Id*. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

5

**Whistleblower Claim**

In their first issue, appellants contend that the trial court erred by asserting subject matter jurisdiction over McMillen's whistleblower claim "because the pleadings and evidence, taken as true, did not establish the minimum jurisdictional requisites." Generally, governmental entities are immune from suit and liability under the doctrine of sovereign immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Although the Whistleblower Act waives immunity from suit to the extent a governmental entity is liable under its provisions, *see* Tex. Gov't Code § 554.0035, the claimant "must actually allege a violation of the Act for there to be a waiver from suit." *Lueck*, 290 S.W.3d at 881. The elements of a whistleblower claim "are jurisdictional and may not be waived." *University of Houston v. Barth*, 403 S.W.3d 851, 853 (Tex. 2013) (per curiam).

"The standard for a 'violation of [the Whistleblower Act]' appears in section 554.002(a)." *Lueck*, 290 S.W.3d at 881. Section 554.002(a) provides that a governmental entity "may not suspend or terminate the employment of, or take adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002(a). Section 554.002(b) describes when "a report is made to an appropriate law enforcement authority," providing:

> (b)  In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:
>
>   (1)  regulate under or enforce the law alleged to be violated in the report; or

6

(2)     investigate or prosecute a violation of criminal law.

*Id.* § 554.002(b).  For purposes of this appeal, a "law" means "a state or federal statute" or "a rule adopted under a statute."  *Id*. § 554.001(1).  Whether the recipient of the allegations is "an appropriate law enforcement authority" under the Whistleblower Act is a question of law.  *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

An employee who did not report to an "appropriate law enforcement authority" may still have a viable whistleblower claim if he believed in good faith that he was reporting to an "appropriate law enforcement authority."  *See* Tex. Gov't Code § 554.002(b).  For an employee to satisfy the good faith requirement, he must have actually believed that the recipient of the report was an "appropriate law enforcement authority" and his belief must have been "reasonable in light of the employee's training and experience."  *Needham*, 82 S.W.3d at 321.  To satisfy the objective component of the good faith requirement, a claimant is entitled to protection "if a reasonably prudent employee in similar circumstances" would have held the claimant's belief.  *Id*. at 320.

Here, it is undisputed that McMillen was a "public employee," that McMillen alleged that the "violation of law" was by HHSC—the "employing governmental entity"—and that HHSC—and not its Commissioner—is the proper party for McMillen's Whistleblower claim under section 554.002.  *See* Tex. Gov't Code §§ 554.001(4)–(5) (defining "public employee" and "state governmental entity"), .002(a).  The parties join issue with whether McMillen established the elements of "a violation of law," a report to an "appropriate law enforcement authority," and a "good faith" belief.  *See id.* § 554.002.  Because they are dispositive, we limit our analysis to appellants' arguments that McMillen "did not report to any appropriate law enforcement authority and he could

7

not have reasonably believed that he did." *See* Tex. R. App. P. 47.1 (appellate courts "must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

"[C]ritical to the determination" of whether the recipient of a report is an appropriate law enforcement authority is the "particular law the public employee reported violated." *Needham*, 82 S.W.3d at 320. As a threshold matter then, we must determine the "particular law" that McMillen reported HHSC violated. *See id.* Although the Whistleblower Act does not require the employee to "identify a specific law when making a report," there must be "some law prohibiting the complained-of conduct to give rise to a whistleblower claim." *Texas Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied).

In the June 2011 memorandum, McMillen did not identify any law that he alleged was being violated, but he cited to the class action litigation in California and a letter from the United States Department of Health and Human Services. McMillen's quoted excerpt from the letter, however, did not include a reference to legal authority. As to the California class action, although he did not identify the law in the memorandum, the law at issue in that case was section 1396p of Title 42 of the United States Code, a federal civil Medicaid law. In his affidavit in support of his response to the plea to the jurisdiction, McMillen also identified two sections of the Texas Human Resources Code and the General Appropriations Act for the 2012-13 Biennium. *See* Tex. Hum. Res. Code §§ 32.039 (addressing damages and penalties that HHSC may assess against applicants for payment of health care services), .064 (addressing cost sharing provisions for recipients of medical assistance); 82d Tex. Leg. R.S. (2011), at 211, para. 17. He averred that "none of these [state] laws

8

appears to allow HHSC to accept reimbursements in the situation I was asked to investigate." On appeal, McMillen argues that accepting payments under the program violated HHSC's statutory authority "because it is only authorized to accept items such as 'damages and penalties' for fraudulent medical claims and collecting and appropriating cost sharing certain Medicaid revenues." *See Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001) (noting "basic rule" that "a state administrative agency has only those powers that the Legislature expressly confers upon it").

The General Appropriations Act, however, is not a "law" that prohibited the complained-of conduct to give rise to a whistleblower claim. *See* Tex. Gov't Code § 554.001(1) (defining "law" to mean "state or federal statute," "ordinance of a local governmental entity," or "rule adopted under a statute or ordinance"); *McElyea*, 239 S.W.3d at 850 (requiring "some law prohibiting the complained-of conduct to give rise to a whistleblower claim"). Paragraph 17 of the General Appropriations Act for the 2012–13 Biennium states:

> The Health and Human Services Commission is authorized to collect and is hereby appropriated all cost sharing revenues generated by Medicaid clients as authorized in Section 32.064 of the Human Resources Code. These revenues may include enrollment fees, deductibles, coinsurance, and portions of the managed care plan premiums.

Similarly, the sections from the Human Resources Code—examples of HHSC's *authority* to monitor and regulate the *provision* of health and human services in the state of Texas—do not prohibit the conduct that McMillen addressed in the June 2011 memorandum, HHSC's acceptance of payments under a particular program.

9

McMillen also has not alleged or identified a violation of criminal law by HHSC. *See Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 189 (Tex. App.—Dallas 2012, pet. denied) ("Investigatory power may make a governmental entity an appropriate law enforcement authority for purposes of the act only if the plaintiff has reported a violation of criminal law. . . . Furthermore, the criminal conduct reported must be within the investigatory powers of the authority receiving the plaintiff's report or the plaintiff must have a good faith belief that the conduct was within the investigatory powers of the authority to which he reported."); *see also Needham*, 82 S.W.3d at 320 (analyzing section 554.002(b)(2) to determine whether the agency had authority to prosecute the particular criminal violation being reported). Thus, we conclude that the only possible law that McMillen reported that HHSC was violating was a federal civil Medicaid law. *See Needham*, 82 S.W.3d at 320.

The issue then becomes whether the recipients of McMillen's memorandum—his supervisor and other HHSC employees higher up the chain of command—were authorized to "regulate under or enforce" this federal law. *See* Tex. Gov't Code § 554.002(b)(1). We conclude that they were not. As the Texas Supreme Court recently recognized, "only the United States Secretary of Health and Human Services (HHS Secretary) can 'regulate under' or 'enforce' Medicare/Medicaid rules." *University of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 685 (Tex. 2013); *see id*. (noting that "42 U.S.C. § 1395hh(a) vests sole power in the HHS Secretary to promulgate and enforce the Medicare/Medicaid rules").

Further, the supreme court has explained that the "restrictive definition of 'appropriate law enforcement authority' requires that the reported-to entity be charged with more

than mere internal adherence to the law allegedly violated." *Texas A&M Univ.–Kingsville v. Moreno*, 399 S.W.3d 128, 129 (Tex. 2013) (per curiam); *see Gentilello*, 398 S.W.3d at 686 ("Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status."). The recipient of the report must have authority over third parties as to the law alleged to be violated and that authority must be "free-standing regulatory, enforcement, or crime-fighting authority." *Gentilello*, 398 S.W.3d at 682, 686; *see Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 654, 657 (Tex. 2013) (holding trial court properly granted plea to jurisdiction as to whistleblower claim and concluding "no evidence that [reported-to] officials had authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally"); *Moreno*, 399 S.W.3d at 130 (explaining that recipient of report must have authority "'to enforce the law that was allegedly violated . . . against third parties generally'" (quoting *Gentilello*, 398 S.W.3d at 686)). Guided by the supreme court's analysis, we conclude that the recipients of McMillen's complaint—HHSC employees with internal authority to comply with the federal civil Medicaid law—were not appropriate law enforcement authorities as a matter of law. *See Gentilello*, 398 S.W.3d at 686; *see also Needham*, 82 S.W.3d at 318 (determining whether appropriate law enforcement authority as matter of law).

We turn then to whether McMillen's pleadings and evidence, taken as true, established that he had a good faith belief that he reported the alleged federal civil Medicaid law violation to an appropriate law enforcement authority. McMillen urges that he had a good faith belief that he was reaching out to an appropriate law enforcement authority because, as an employee, he saw OIG and its Internal Affairs Division in action. To support his good faith belief, McMillen

11

points to OIG's regulations, the websites of OIG and the Internal Affairs Division, and the Internal Affairs Division's decision to investigate his allegations and to designate materials confidential as part of the investigation. *See* Tex. Gov't Code § 531.1021 (providing materials to be designated confidential); *see also id.* § 531.102 (describing responsibilities of OIG to include "investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state . . . and the enforcement of state law relating to the provision of those services"); 1 Tex. Admin. Code §§ 371.11 (Office of Inspector General, Purpose and Scope) (describing purpose and scope of OIG), .1603 (describing OIG's responsibilities and administrative enforcement authority).

Consistent with the applicable regulations, the websites describe the functions of OIG and the Internal Affairs Division to include investigating complaints that "allege violations of criminal law," "complaints involving misconduct by agency employees," and complaints involving "retaliation against employees under the Whistleblower Act." OIG states on its website that it is authorized to "take enforcement action," including issuing sanctions, "against providers and recipients." The Internal Affairs Division states on its website that it "performs investigation accountability of health and human services resources, programs, employees, and contractors."

The investigative and enforcement authority of OIG and the Internal Affairs Division against third parties, however, as to the "provision and delivery" of health services in the state and the "enforcement of state law relating to the provision of those services," do not support McMillen's good faith belief as to the law at issue, a federal law. *See* Tex. Gov't Code §§ 531.1011(10) (defining "provider"), .102(a); *Gentilello*, 398 S.W.3d at 685 (noting that "*all* governmental bodies must themselves adhere to various statutes and regulations, but such compliance does not equate to

12

the authority to 'regulate under or enforce' those provisions" and that "Whistleblower Act speaks to an authority statutorily empowered to regulate under or enforce the actual law allegedly violated"); *see also Barth*, 403 S.W.3d at 857 (noting that claimant must have "objective good-faith belief that he was reporting violations of law . . . to an entity that could have enforced, investigated, or prosecuted similar violations against third parties—not just an entity that can internally discipline its own employees for an alleged violation"); *Moreno*, 399 S.W.3d at 130 ("'A whistleblower cannot reasonably believe his supervisor is an appropriate law enforcement authority if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law.'" (quoting *Gentilello*, 398 S.W.3d at 689)); *Gentilello*, 398 S.W.3d at 687 (reaffirming that "lodging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the Whistleblower Act"); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 628 (Tex. 2010) (per curiam) (noting that plaintiff "failed to address or point to evidence that he had a good faith belief that the city council had authority under the Open Meetings Act to regulate, enforce, prosecute, or investigate its own alleged violation of the Act apart from its inherent authority to simply decide not to meet," noting that "being required to comply with the Open Meetings Act does not equate to having authority to 'regulate under or enforce' those provisions as to itself," and holding that city council was not appropriate law enforcement authority). We also decline to place significance on the internal investigation conducted by the Internal Affairs Division as to McMillen's allegations. *See Gentilello*, 398 S.W.3d at 688 (concluding "stock anti-retaliation policies" as to report by employee of compliance problems with Medicare/Medicaid laws reflected university's

13

"commitment to internal compliance" and that university "would abide by all directives from the federal government concerning Medicare/Medicaid laws, nothing more").

McMillen focuses on the absence of the phrase "alleged to be violated in the report" in subsection (b)(2) of section 554.002 of the Whistleblower Act to support his position that the authority of OIG and the Internal Affairs Division to investigate and prosecute violations of criminal law independently places them within the statutory definition of an "appropriate law enforcement authority." *See* Tex. Gov't Code § 554.002(b)(2). But, as noted above, McMillen has not alleged a violation of criminal law. *See Needham*, 82 S.W.3d at 320; *Mullins*, 357 S.W.3d at 189. We also decline to adopt McMillen's interpretation of subsection (b)(2) that would make every administrative agency that has authority to investigate and prosecute a criminal offense an "appropriate law enforcement authority" under the Whistleblower Act regardless of the law alleged to be violated. *See Needham*, 82 S.W.3d at 319 ("Under the statutory definition, it is clearly not enough that a governmental entity has *general* authority to regulate, enforce, investigate, or prosecute."); *Mullins*, 357 S.W.3d at 190 (concluding that investigative authority that included coordinated activities with federal law enforcement agencies not "broad enough to include the power to investigate alleged criminal violations of federal environmental laws").

Given McMillen's training as an attorney with over twenty years of experience, we conclude that he failed to establish that he had an objectively reasonable belief that a recipient of his alleged reports was an "appropriate law enforcement authority." *See Barth*, 403 S.W.3d at 858 (holding that plaintiff failed to meet "objective component of the good-faith test" "given [plaintiff]'s legal training and experience as a practicing attorney"); *Gentilello*, 398 S.W.3d at 689 (concluding

14

that "a whistleblower cannot reasonably believe his supervisor is an appropriate law-enforcement authority if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law"). A "reasonably prudent employee in similar circumstances" to McMillen would not have believed that the reported-to individuals were appropriate law enforcement authorities as to an alleged violation of federal civil Medicaid law. *See Needham*, 82 S.W.3d at 320; *see also Nieto v. Permian Basin Cmty. Ctrs. for MHMR*, No. 11-13-00012-CV, 2014 Tex. App. LEXIS 1003, at *11 (Tex. App.—Eastland Jan. 30, 2014, no pet.) (mem. op.) ("We cannot conclude that a 29-year-old with an undergraduate degree would believe that the executive director or the compliance officer at PBCC regulated or enforced Medicaid/Medicare rules outside of PBCC."). Thus, we conclude that the trial court erred by denying appellants' plea to the jurisdiction as to McMillen's Whistleblower claim and sustain their first issue.[5]

---

[5] To support his position that he reported to an appropriate law enforcement authority, McMillen cites *City of Houston v. Levingston*, 221 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006, no pet.), and *Texas Department of Human Services v. Okoli*, 317 S.W.3d 800 (Tex. App.—Houston [1st Dist.] 2010), *rev'd*, 440 S.W.3d 611 (Tex. 2014). The supreme court reversed the decision of the court of appeals in *Okoli*, concluding that the employee "neither reported the alleged violations he witnessed to an appropriate law enforcement authority nor in good faith could have believed he had." 440 S.W.3d at 617. Thus, that case is not helpful to McMillen. Further, in contrast with McMillen's allegations, the plaintiff in *Levingston* alleged violations of criminal laws and the reported-to governmental entity was charged with enforcing the laws at issue. *See Levingston*, 221 S.W.3d at 219, 221–24 (reports included violations of criminal law and evidence that city department charged with investigating or enforcing laws at issue). The case cited by McMillen in a post-submission letter brief similarly concerned allegations of criminal law reported within a division of the Office of the Attorney General. *See Office of the Attorney Gen. v. Weatherspoon*, 435 S.W.3d 844, 851 (Tex. App.—Dallas 2014, pet. filed) (report of criminal conduct within OAG was to appropriate law enforcement authority). Thus, we find those cases factually distinguishable and McMillen's reliance on them misplaced.

**Free Speech Claim**

In their second issue, appellants contend that the trial court erred by asserting subject matter jurisdiction over McMillen's Texas Constitutional free speech claim "because the pleadings, taken as true, did not establish the minimum jurisdictional requisites." They contend that they are immune from suit as to McMillen's free speech claim because article I, section 8 of the Texas Constitution does not create a private right of action for damages. McMillen agrees that he cannot assert a private action for damages under his free speech claim. *See* Tex. Const. art. I, § 8; *Beaumont v. Bouillion*, 896 S.W.2d 143, 147–49 (Tex. 1999) (holding no private right of action for damages arising under free speech section of Texas Constitution). He also states that the proper defendant for his free speech claim is the Commissioner, in his official capacity, and not HHSC. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Within these confines, we address appellants' challenge to McMillen's free speech claim.

The parties agree that the elements of a retaliation claim by a public employee based on protected free speech under article I, section 8 of the Texas Constitution are: "(1) speech by a public employee involving a matter of public concern; (2) the employee's interest in commenting on a matter of public concern outweighs the employer's interest in efficiency; (3) an adverse employment action; and (4) the speech motivated the adverse employment action." *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 245 (Tex. App.—El Paso 2012, no pet.) (elements of First Amendment retaliation claim); *see Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (analyzing Article I, section 8 claim pursuant to First Amendment jurisprudence under an assumption that the "concerns are congruent" absent any argument otherwise).

16

Because it is dispositive, we limit our analysis to appellants' argument that McMillen did not establish the first element of his free speech claim. *See* Tex. R. App. P. 47.1. Appellants argue that, to the extent McMillen seeks equitable relief, he was not speaking out on a matter of public concern because his internal communications subject to the attorney-client privilege were made in his capacity as a public employee and not as a private citizen.

We are informed by the Supreme Court's analysis in *Garcetti v. Ceballos*, 547 U.S. 410, 418–21 (2006). In that case, the Supreme Court held that an attorney who wrote a memorandum "pursuant to his official duties" was not speaking as a private citizen for free speech purposes and that "the Constitution does not insulate [this type of] communications from employer discipline." *Id*. at 421. The Supreme Court explained: "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 421–22; *see also Davis v. McKinney*, 518 F.3d 304, 312–13 (5th Cir. 2008) (discussing "threshold layer to previous analysis" added by *Garcetti* that shifted focus "from the content of the speech to the role the speaker occupied when he said it").

McMillen urges that, although his statements in his memorandum may not be protected speech because he prepared the memorandum as part of his job duties, his job duties did not include his "subsequent" reports to "higher and higher levels." But McMillen's "speech" directed internally owed its existence to his professional responsibilities to provide legal advice to his employer, HHSC. *See McKinney*, 518 F.3d at 313 (noting that "[c]ases from other circuits are

17

consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job" as compared with public employee who "takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace" (citations omitted)). Similar to the speech at issue in *Garcetti*, McMillen's "speech" was made in response to his supervisor's assignment and as part of his job duties as an attorney conducting legal research and providing legal analysis to his employer.[6] *Garcetti*, 547 U.S. at 421 ("The controlling factor [was] that [the employee]'s expressions were made pursuant to his duties as a calendar deputy."). Guided by the Supreme Court's analysis in *Garcetti*, we conclude that the trial court erred by denying appellants' plea to the jurisdiction as to McMillen's free speech claim and sustain their second issue.[7]

## CONCLUSION

For these reasons, we reverse the trial court's order that denied appellants' plea to the jurisdiction and dismiss McMillen's claims for lack of subject matter jurisdiction.

---

[6] For example, in a letter to HHSC's Executive Commissioner that accompanied a copy of the June 2011 memorandum, McMillen expressly stated that he raised his concerns about the program at issue because it was one of his "responsibilities as an attorney who represents an organization," citing rule 1.12 of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.12 (addressing representation of organization as client).

[7] Because we have concluded that the trial court did not have jurisdiction to consider McMillen's whistleblower and free speech claims, we do not reach appellants' third issue. *See* Tex. R. App. P. 47.1.

18

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Reversed and Dismissed

Filed:   January 8, 2015