

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CRYSTAL CITY INDEPENDENT SCHOOL DISTRICT, | § | No. 08-23-00021-CV |
| | § | Appeal from the |
| Appellant, | § | 365th Judicial District Court |
| v. | § | of Zavala County, Texas |
| MAGDALENA FLORES, | § | (TC# 21-09-14815-ZCV) |
| Appellee. | § | |

## MEMORANDUM OPINION

After Magdalena Flores filed two complaints with the Texas Education Agency (TEA) regarding purported time theft by her coworkers, the Crystal City Independent School District (CCISD) declined to renew her employment contract. Flores sued CCISD under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.001-.010. CCISD sought dismissal through a plea to the jurisdiction, which the trial court denied. Because we conclude Flores has not alleged a violation under the Act, CCISD retains its immunity from suit. We reverse the trial court's judgment and dismiss the case for want of jurisdiction.[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* TEX. R. APP. P. 41.3.

## BACKGROUND

Flores was a longtime CCISD employee and worked as a Business Manager in CCISD's Finance Department at the time the events leading to this suit arose. Part of her duties as Business Manager included managing the financial and business affairs of CCISD, including accounting and payroll. She was also a "timekeeping manager," which meant she had access in the CCISD timekeeping software to review when employees clocked in and out and could edit those entries. At the request of her supervisor, CCISD's former superintendent Edward Churchill, Flores periodically ran payroll reports to audit timekeeping entries.

In September 2020, Flores ran one such report which surveyed all CCISD employees who accrued overtime hours during the pay period. Sarah Garcia, the CCISD Director of Human Resources, showed up as an error on the report because she had remained clocked in for a week straight. In looking into the issue further, Flores discovered Garcia's past timekeeping entries had been edited without Churchill's approval.[2] Flores claims she knew Garcia's timekeeping entries were edited without Churchill's approval because she was with Churchill when she ran the report, and he indicated Garcia had not submitted any timekeeping adjustment forms, as she would have through the standard district practice for correcting time clock errors on the timekeeping software (called Time Clock). Though Garcia was a salaried employee and thus ineligible for overtime, Flores contends Garcia's inaccurate timekeeping was problematic because she would have been able to "trade in" unused leave days at the end of the school year through CCISD's incentive allotment program or accumulate additional paid time off. In other words, Garcia could have received a benefit from CCISD for being clocked in on days that she did not work if the timekeeping entries were not corrected by the end of the school year.

---

[2] Like Flores, Garcia had access to edit timekeeping entries by virtue of her position in human resources.

2

The following month, Flores observed during a routine review of timekeeping entries that Yvonne Serna, a secretary in the human resources department, was clocked in while out on medical leave. Shortly after, Flores noticed her access to the timekeeping software had been removed. Around the same time, Garcia also notified CCISD employees that she was planning to "clean" the timekeeping system. Flores became suspicious that Garcia was attempting to "cover up" these timekeeping inaccuracies (which Flores characterizes as "fraud") and unapproved edits through those actions. So, on October 19, 2020, Flores filed a complaint with the Complaints, Investigations and Enforcement Division of the Texas Education Agency (TEA), in which she stated in relevant part:

> Mr. Churchill and I have uncovered some possible falsified time records from our Human Resource Director and her staff. . . . The Human Resource Director is trying to schedule a training and clean up session for our timekeeping system in the midst of this investigation. I feel that I should report this to TEA instead of our Board members for fear of retaliation because the Human Resource Director is a spouse to a Board member. . . . As a result of running an overtime report, it was discovered that 1 out [of] 320 employees had remained in a clock in status since a prior week. . . . This caused the report to produce an exception and difficulty to get [an] accurate date. The employee is the Human Resource Director who is the spouse of our School Board Member. . . . [The superintendent] has documentation of the edits done on behalf of the secretaries to correct the HR Director[']s clock in and outs. He signed a stack of time adjustment forms that should have been done prior to correcting the time edits.[3]

Flores filed a second complaint with TEA on December 4, 2020, in which she stated she "fear[ed] retaliation" from the newly elected CCISD Board President, who is Garcia's husband. Flores alleged the Board President's "conflict of interest . . . is very evident" because he was "attempt[ing] to get details" on the first anonymous TEA complaint she filed, including her identity. She said she "worr[ied] daily for [her] job," which was "causing [her] stress, agitation,

---

[3] Churchill later approved Garcia's timekeeping edits after the edits had been entered.

and emotional distress," and "ask[ed] for protection" against retaliation and under the Whistleblower Act.

TEA contacted Churchill in March 2021 to notify him it received multiple complaints regarding CCISD, including Flores's, and request related documents, as well as CCISD's response. TEA stated it would "review, analyze, and evaluate the submitted documents," and "gather and review information from a variety of sources and individuals" to determine whether a complaint could be substantiated. If TEA determined "questions remain[ed] upon completion of the complaint review," it stated it could conduct a Special Accreditation Investigation as authorized by the Texas Education Code.

In November 2021, TEA updated CCISD of the status of its investigation, noting that the Commissioner of Education authorized additional investigation by TEA's Special Investigations Unit regarding some of the complaints, including that "CCISD staff allegedly falsified time sheets, time keeping records, performed fraudulent time keeping practices and attempted to cover up and clean up the fraud," and "[a]lleged Conflicts of Interest by CCISD Trustees and CCISD staff or employees." TEA also listed the following alleged statutory violations implicated by all complaints (i.e., beyond just Flores's complaint): Texas Education Code §§ 11.051 (Governance of Independent School District), 11.1511 (Specific Powers and Duties of the Board), 11.1513(f)–(h) (Employment Policy), and Chapter 44 (School District Fiscal Management); Texas Government Code Chapter 551 (Open Meetings); and Texas Local Government Code Chapters 171 (Conflicts of Interest) and 176 (Disclosure of Relationships with Government Officers).

Meanwhile, Flores's complaints and her identity were revealed to the CCISD Board shortly after she filed her second complaint. Her employment contract expired at the end of the school year, and the motion to renew her contract failed with a Board vote of 3-4. Flores's employment

4

with CCISD thus ended at the end of the 2020–21 school year. After unsuccessfully invoking CCISD's local grievance process, Flores sued CCISD for retaliation under the Whistleblower Act. The relevant factual allegations in Flores's petition are:

- [Flores] ran an overtime report [which] indicated [Garcia] clock[ed] in . . . on or about September 18, 2020, and had not clocked out as of the report date of September 25, 2020.

- [Flores] conducted a routine review of timecard entries and observed that [Serna] was clocked-in when in fact she was out on medical leave. To determine whether the entry was a result of fraud or mistake, [Flores] conferred with an administrative employee in the Human Resources Department who handled attendance reporting in Serna's absence, and who may have accidentally clocked Serna in. [However, Flores] learned that Serna was not present in the building and the assistant did not believe [it to] be a mistake.

- Despite [Flores's] inquiry and investigation into the violations, [Flores] did not receive any notice that those fraudulent entries were the result of mistake but confirmed their wrongful nature. As a result, [Flores] held an honest, good-faith belief that [Garcia] and Serna engaged in fraudulent timekeeping practices.

- When [Flores] submitted the complaint, she honestly believed she was reporting a violation of law which the Texas Education Agency was properly authorized to enforce or regulate.

- [Flores] was a public employee who in good faith reported known fraudulent timekeeping practices to an appropriate law enforcement authority, which she in good faith believed was authorized to regulate under and enforce the law, or alternatively investigate the known violation.

After filing an answer generally denying Flores's allegations and raising affirmative defenses and special exceptions, CCISD filed a plea to the jurisdiction. Flores responded, and the trial court held a hearing on the plea, which it denied. CCISD's accelerated interlocutory appeal followed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## STANDARD OF REVIEW

Governmental units, like CCISD, are immune from lawsuits except where the Legislature expressly waives that immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Sovereign

5

immunity deprives a trial court of subject matter jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).

A defendant may challenge subject matter jurisdiction through a plea to the jurisdiction. *Flores v. Texas Dep't of Criminal Justice*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). The plea can attack both the pleaded facts as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). Pleadings are construed liberally in favor of the plaintiff. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (citation omitted). When there is no question of fact as to the jurisdictional issue, the trial court rules on the plea as a matter of law. *Flores*, 634 S.W.3d at 450 (citing *Heinrich*, 284 S.W.3d at 378). However, when the defendant challenges the existence of jurisdictional facts, the court must move beyond the pleadings and consider the evidence. *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). The court can consider evidence necessary to resolve any dispute over those facts, even if the evidence implicates both the court's subject matter jurisdiction and the merits of the case. *Garcia*, 372 S.W.3d at 635. When, as here, the trial court has not issued findings of fact, we imply all findings substantiated by the evidence necessary to support the judgment. *Lopez v. Serna*, 414 S.W.3d 890, 893 (Tex. App.—San Antonio 2013, no pet.).

Because this standard mirrors that of summary judgments, the plaintiff must raise at least a genuine issue of material fact to avoid dismissal if his factual allegations are challenged with supporting evidence necessary to the consideration of the plea to the jurisdiction. *Clark*, 544 S.W.3d at 771. In determining whether a material fact issue exists, we take as true all evidence

favorable to the plaintiff, indulge every reasonable inference and resolve any doubts in his favor. *Heinrich*, 284 S.W.3d at 378 (citing *Miranda*, 133 S.W.3d at 228).

We review a trial court's denial of a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226.

## APPLICABLE LAW

The Whistleblower Act prevents a state or local governmental entity from taking any adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). The Legislature has provided a limited waiver of immunity under the Act for cases in which the public employee alleges a prima facie violation. *Id.* § 554.0035. "Although immunity from suit is a jurisdictional question generally distinct from immunity from liability, [the Texas Supreme Court has] held the two are interwoven in the context of the Whistleblower Act, which requires plaintiffs to allege jurisdictional facts giving rise to an actual violation of the Act to qualify for the statutory waiver of immunity." *Texas Health & Human Services Comm'n v. Pope*, No. 20-0999, 2023 WL 3267606, at *3 (Tex. May 5, 2023) (citing *Lueck*, 290 S.W.3d at 881).

To affirmatively demonstrate the trial court's jurisdiction under the Act, a plaintiff must allege facts sufficient to show that she "(1) reported (2) a violation of law by the employer or another public employee (3) to an appropriate law enforcement authority, (4) the report was made in good faith, and (5) the adverse action would not have occurred when it did if the employee had not reported the illegal conduct." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). CCISD does not dispute that Flores was a public employee, reported conduct by another public employee, or suffered an adverse personnel action following that report. Instead, it argues Flores failed to meet her burden to demonstrate a waiver of immunity of her Whistleblower Act claim

7

because her pleadings and the jurisdictional evidence affirmatively negate the possibility that any report she made qualifies as a good faith violation of law to an appropriate law enforcement authority.

The Act defines a "law" as "a state or federal statute"; "an ordinance of a local governmental entity"; or "a rule adopted under a statute or ordinance." TEX. GOV'T CODE ANN. § 554.001(1). To receive protection under the Act, the employee must report a violation of law in subjective and objective good faith, meaning "the employee believed that the conduct reported was a violation of law" and that belief "was reasonable in light of the employee's training and experience." *Texas Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied) (quoting *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). Though there is no requirement that an employee identify a specific law when reporting an alleged violation, there must be "some law prohibiting the complained-of conduct described in the report." *Connally v. Dallas Indep. Sch. Dist.*, 506 S.W.3d 767, 785 (Tex. App.—El Paso 2016, no pet.) (citing *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied)).

The Act also clarifies that "a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." TEX. GOV'T CODE ANN. § 554.002(b). "To satisfy this requirement, a plaintiff seeking the Act's protection must prove that the report was made to an appropriate law-enforcement authority, or that the employee had a good-faith belief that it was." *Texas Dep't of Human Services v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014) (citing *Texas Dep't of Transportation v. Needham*, 82 S.W.3d 314, 320

(Tex. 2002)). Here too the good-faith-belief component has both a subjective and an objective element. *Id.* While the employee must have personally believed that the entity is an appropriate law enforcement authority, she will receive protection under the Act only if "a reasonably prudent employee in similar circumstances would have believed" the same. *Id.* In that regard, "for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." *Univ. of Texas Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013). In other words, "the Act protects those who report to authorities that issue legal directives, not authorities that follow them." *Id.*

Further, whether a governmental entity is an "appropriate" law enforcement authority under the Act depends on the particular law the employee reported as violated. *Needham*, 82 S.W.3d at 320. "Under the statutory definition, it is clearly not enough that a government entity has *general* authority to regulate, enforce, investigate, or prosecute." *Id.* at 319. "[I]n order to invoke the Whistleblower Act, the reported-to entity must have the authority to investigate the particular criminal conduct reported by the employee." *Connally*, 506 S.W.3d at 777.

### ANALYSIS

CCISD contends the trial court erred by denying its plea to the jurisdiction because Flores has not pled jurisdictional facts sufficient to bring her claim within the Act. Specifically, CCISD maintains Flores is not a protected whistleblower under the Act: as to her first TEA complaint, that (1) Garcia remained clocked in outside her working hours; (2) Garcia failed to follow timekeeping procedures by obtaining a signed form from her supervisor to correct her timekeeping errors; (3) Garcia and other CCISD employees engaged in a "cover up" of the purported timekeeping

9

malfeasance; and as to her second TEA complaint, that (4) Garcia's relationship with CCISD's then-Board President created a conflict of interest.

**A. Did Flores's report that Garcia remained clocked in outside her working hours and engaged in a "cover up" of her purported malfeasance represent a good-faith violation of law to an appropriate law enforcement agency?**

CCISD contends that the portion of Flores's claim based on her TEA complaint that Garcia remained on the clock outside her working hours and engaged in a "cover up" of those actions must be dismissed because Flores cannot identify a law Garcia violated in doing so. CCISD maintains Flores cannot meet the good-faith-belief requirement because, based on her experience and training, she knew or should have known that Garcia remaining clocked in was not a violation of any law, including the statutes Flores cites in her response to its jurisdictional plea and on appeal. CCISD also argues Flores did not make her report of suspected violation of criminal law to an appropriate law enforcement agency.

Flores responds that the Whistleblower Act does not require her to identify a law violated in her TEA complaints, so long as she complained of unlawful conduct. She claims the conduct she reported constitutes violations of law or conduct which she believed at the time in good faith to be illegal. Flores points to the Texas Penal Code, contending her report described a violation of § 37.10(a) regarding tampering with government records. Flores also argues Garcia's timekeeping practices violates "[a]t a minimum" Standard 1.1 of the Educator Code of Ethics and § 21.006(b)(2)(C) and (E) of the Education Code. Flores urges the fact that TEA "opened a full special investigation" supports her argument that she reported conduct constituting a violation of law, citing to TEA's notice of its investigation which identified alleged violations of law including Texas Education Code § 11.051 and Chapter 44 of the Texas Education Code.

First, to the extent Flores's complaint relies on Garcia's purported violation of the Texas Penal Code, it is not protected by the Act because the TEA is not an appropriate law enforcement

10

authority for reporting criminal law violations. Even assuming that Flores's complaint did identify conduct that violated the Penal Code, the TEA is not an appropriate law enforcement authority under the Act because violations of the Penal Code are not within its investigatory jurisdiction. Indeed, the TEA complaint form specifically states that "[t]he TEA can only accept complaints that allege a violation of a federal or state education law or regulation over which the TEA has the jurisdiction, or authority, to regulate." As the TEA's notice of special investigation to CCISD explains, "[d]uring the course of [its] investigation, TEA may discover matters that warrant immediate attention or identify concerns that are not within its jurisdiction and authority to address. TEA will make referrals to the proper agency, as deemed necessary." "[I]f the reported-to authority . . . must . . . refer any reports of criminal law violations to an outside agency, then the entity does not qualify as an appropriate law enforcement authority." *Connally*, 706 S.W.3d at 777 (citing *Office of Attorney Gen. v. Weatherspoon*, 472 S.W.3d 280, 282 (Tex. 2015)). Because the TEA cannot "regulate, enforce, investigate, or prosecute" criminal law violations, it is not an appropriate law enforcement authority for Flores's report of purported violations of the Penal Code. *Needham*, 82 S.W.3d at 319. And even if Flores personally believed TEA was an appropriate law enforcement authority to submit a report of Texas Penal Code violations, that belief was not objectively reasonable because a reasonably prudent employee in similar circumstances would not have believed the TEA had investigatory or enforcement powers over criminal violations, particularly given TEA's disclaimer on the complaint form Flores used. *See Okoli*, 440 S.W.3d at 614.

Further, Flores cannot meet the objective prong of the good-faith-belief requirement for the laws she contends Garcia's timekeeping practices and her alleged "cover up" violated. While "good faith" under the Act means the employee subjectively believed that the conduct she reported was a violation of law, it also requires that employee's belief to be objectively reasonable in light

11

of her training and experience. *Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 955 (Tex. 1996) (citing *Hart*, 917 S.W.2d at 784). Flores presented evidence that she honestly believed Garcia's actions were a violation of law, so her subjective belief satisfies the first good-faith prong. However, her belief fails to satisfy the second prong because it was not reasonable considering her experience and training.

The jurisdictional evidence shows Flores was a high-level finance administrator with over ten years of CCISD-specific experience. In her previous CCISD roles, she served as an accountant and assistant business manager, in which she attests she was part of a team that audited financial records after alleged fraud to regain state funding. As part of her role as business manager, she testified it was her job to "oversee payroll . . . balance the budget, [and] keep track of all the finances," among other things. She oversaw business and finance staff members, regularly ran payroll reports and had access to timeclock entries for the whole district. She stated she felt she "had enough training" to interpret timeclock reports and was "familiar with how to do an audit on the district's time clock system."

Flores testified that "[e]rrors and time clock are not a rarity," though in her experience, editing a time entry "without approval . . . was rare." She recalled "maybe four or five" other times in which she encountered the same reporting error as arose in Garcia's case, i.e., an employee who showed up as still clocked in when she ran a timeclock report. However, she attested she never filed a grievance against anyone else for similar timekeeping errors. Flores also stated she too had forgotten to clock in or out at points during her CCISD employment. When asked if any unauthorized modifications to timekeeping entries were always the result of fraud, she responded, "I can't say that always."

12

Though Flores maintains she knew Garcia's timekeeping edits had been entered without Churchill's approval because he told Flores he had not signed any time adjustment forms for Garcia, Flores did not share with Churchill (who was her supervisor, as well as Garcia's) that she believed Garcia committed fraud before filing her TEA complaint. Flores also acknowledged Garcia is salaried and thus not eligible for overtime such that Garcia would not receive any benefit from remaining clocked in during hours where she was not at work until the end of the school year, when she would have the option of financial incentives through the CCISD buy-back program.

Flores also testified that as part of Garcia's "cover up" of her timekeeping malfeasance, Garcia scheduled a training on Time Clock through the software vendor, rather than Region 20. Flores stated that Garcia "wanted a particular person in Time Clock" to do the training, but "Region 20 could have done the training as well." Flores contends this was fraud because she "fe[lt] that Region 20 . . . would have sent Mr. Churchill feedback instantly" because Region 20 "would oversee Time Clock and training and always send[s] feedback[.]" But Flores also testified Time Clock had previously done trainings.

Flores's testimony also included the following exchange:

Q: So aside from the allegation that there was training and cleaning up and the missing time sheet adjustment forms that . . . in your opinion, should have been done prior to the [edits], is there any other reason that caused you to believe that there was fraud?

A: I don't know. To me, that was enough to -- to feel something was wrong, and if I discovered it, I felt that I should report it, because I didn't want that to be I'm covering up for someone. I had already had -- around this time -- I don't know exactly when, but I had already had the auditor question our timekeeping practices. . . . So I didn't want to be the one to say that I saw there was edits and mistakes, and I didn't report it.

In sum, the record shows Flores was an experienced CCISD administrator with expertise in finance and payroll, including the Time Clock software and internal timekeeping procedures. A reasonably prudent individual with similar training and experience and in similar circumstances

could not have believed Garcia's actions—i.e., failing to clock out for a week as a salaried employee, getting her supervisor's approval for timekeeping errors after the edits had been entered, "cleaning" the timekeeping system, and scheduling training on the timekeeping system through the software vendor, rather than the region—violated the law. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010) (per curiam). It was thus not objectively reasonable for Flores to believe they did. *See* TEX. GOV'T CODE ANN. § 554.002(a); *see also Austin Indep. Sch. Dist. v. Anderson*, No. 03-21-00286-CV, 2022 WL 3649357, at *7 (Tex. App.—Austin Aug. 25, 2022, no pet.) (mem. op.) (determining it was objectively unreasonable for employee to believe colleague's sleeping while on duty constituted theft); *City of S. Houston v. Rodriguez*, 425 S.W.3d 629, 636–37 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (concluding it was objectively unreasonable for employee to believe there was a "ticket fixing" scheme at the municipal court based on a colleague's statement and her discovery of several improperly processed tickets). The record establishes Flores did not in good faith report a violation of law when she complained to the TEA about Garcia's timekeeping practices.[4]

Issues one and three are sustained.

### B. Did Flores's report that Garcia failed to follow CCISD's timekeeping corrections procedure identify a violation of law under the Act?

CCISD also argues Flores is not protected under the Act as to her report that Garcia corrected her timekeeping errors without first getting Churchill's approval because it was an internal CCISD procedure, not a "law" under the Act's definition. We agree.

---

[4] Flores points to the fact that the TEA opened a Special Investigation as support for her position that she identified violations of law. However, as the TEA's Notice of Complaint Review states, it may conduct a Special Investigation "[i]f questions remain upon completion of the complaint review[.]" The fact that "questions remain[ed]" following TEA's complaint review does not establish Flores in good faith reported a violation of law.

14

"A rule is only a 'law' under the Whistleblower Act . . . if the rule is 'adopted under a statute.'" *Univ. of Houston v. Barth*, 403 S.W.3d 851, 855 (Tex. 2013) (quoting TEX. GOV'T CODE ANN. § 554.001(1)(C). "Other complaints and grievances, including alleged violations of an agency's internal procedures and policies, will not support a claim." *Mullins*, 357 S.W.3d at 188 (quoting TEX. GOV'T CODE ANN. § 554.001(1)).

In *Barth*, a professor (who was also an attorney) reported alleged violations of internal administrative policies found in the university's System Administrative Memorandum. 403 S.W.3d at 853. However, because there was no evidence that the university's Board of Regents enacted the administrative rules under its statutory authority in the Education Code, the Texas Supreme Court held the rules did not fall within the Act's definition of "law." *Id.* Barth argued that even if the rules were not "laws," he should still receive protection under the Act because he believed in good faith that they were. *Id.* at 856. But the Court held he could not satisfy the objective prong of the good-faith-belief requirement "given his legal training, experience as a former practicing attorney, and familiarity with the University's rules." *Id.* at 856–57. In other words, Barth was not protected under the Act because a reasonably prudent individual with his experience and training could not have reasonably believed the conduct that he reported constituted a violation of law. *Id.*

As in *Barth*, the record here is unclear as to who implemented the timekeeping correction procedure or by what process. There is no evidence in the record that suggests this rule was enacted or adopted under a statute. Churchill described the process in his deposition:

> "[B]ecause it's just human nature, somebody will forget to clock in and clock out, so there's a form in Crystal City that was designed prior to me getting there that if you miss a punch or that you don't clock out, you go to your supervisor. You fill out the form. Then that allows Ms. Carlos to go in and do the time adjustment on the time clock after the superintendent's approval."

He further stated the rule was "an internal control" and "not a legal requirement." Flores stated time entries "cannot be corrected without a time adjustment form," which "would be signed by [the employee's] immediate supervisor." She testified that when she "came on board at Crystal City ISD, that time adjustment form was like an affidavit that the employee signed that says, [']Hey I did a mistake for such-and-such reason, so please fix it.'"

Flores attempts to distinguish *Barth*, arguing it does not apply because Barth failed to report falsification of government records to an appropriate law enforcement authority under the Act by making his complaint to internal university entities. But she does not engage with the pertinent holding in *Barth* on this point—that internal administrative policies are not "law" under the Act. *Id.* at 855. *Barth* makes clear that failing to comply with CCISD's timekeeping correction process is not a violation of "law" under the Act because there is no evidence that rule was adopted under a statute or ordinance. And given Flores's training and experience described above—including as a CCISD administrator with years of experience in the business department and payroll and as someone who had used the time adjustment form herself—she could not satisfy the objective prong of the good-faith-belief requirement anyway.

In sum, Flores presented no evidence that the timekeeping correction process was any more than an internal procedure or policy. That cannot support a claim under the Act. *See Mullins*, 357 S.W.3d at 188.

Issue two is sustained.

### C. Did Flores's report regarding alleged conflicts of interest identify a violation of law under the Act?

Finally, CCISD contends Flores failed to satisfy the Act's local-grievance requirement as to her second TEA complaint, which concerned an alleged conflict of interest between Garcia and her husband, who at the time served as CCISD's Board President. Though CCISD acknowledges

Flores submitted a grievance through the CCISD local grievance policy, it argues that because she did not raise the issues contained in her second TEA complaint (i.e., the conflict of interest), she failed to satisfy the Act's requirement under § 554.006 that she initiate the local grievance procedure before suing under the Act. Alternatively, CCISD argues Flores has not identified a violation of law under the Act as to the purported conflict of interest.

Flores did not respond to CCISD's § 554.006 argument at the trial court or on appeal. However, even assuming Flores did initiate action under CCISD's grievance policy as to her second complaint, she has not identified a violation of law under the Act related to alleged conflicts of interest. Because CCISD asserted in its plea to the jurisdiction that the conduct of which Flores complains is not prohibited by law, Flores was required to respond by "identifying what law or laws [s]he believed were violated by the conduct described in h[er] report . . . ." *Coll. of the Mainland v. Meneke*, 420 S.W.3d 865, 870 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Mullins*, 357 S.W.3d at 189). Of the laws noted above that Flores contends were violated by the conduct described in her two TEA complaints, only Chapters 171 and 176 of the Local Government Code include laws regarding conflicts of interest. However, neither of those chapters implicate the conduct Flores reported in her second TEA complaint—i.e., the CCISD Board President "using his power to gather information on the previous complaint" Flores made to TEA regarding Garcia, his wife. *See* TEX. LOC. GOV'T CODE ANN. §§ 171.004(a) (requiring school board member to file affidavit regarding his "substantial interest in a business entity or in real property" in certain circumstances); 176.003 (requiring school board member to file a conflicts disclosure statement regarding his personal, employment, or other business relationship with a vendor in certain circumstances). There is no fact issue regarding whether the alleged conflicts of interest Flores reported in her second TEA complaint violate any portion of Chapters 171 or 176

17

of the Local Government Code or whether Flores could have formed a reasonable belief that they did.

Issue four is sustained.

## CONCLUSION

Flores cannot establish the necessary waiver of governmental immunity that would permit her case to proceed under the Act. We thus reverse the trial court's judgment and render judgment dismissing her suit for lack of jurisdiction.

YVONNE T. RODRIGUEZ, Chief Justice

September 21, 2023

Before Rodriguez, C.J., Palafox, J., and Ferguson, Judge